Argued and submitted December 9, 1997, vacated on appeal; affirmed on
cross-appeal June 10, petition for review allowed October 28, 1998 (327 Or 620)

J. William BENNETT,
*Appellant - Cross-Respondent,*

*v.*

Gerald Roland BAUGH
and Virginia Mae Baugh,
*Respondents - Cross-Appellants.*

(9412-08281; CA A91803)

961 P2d 883

Jonathan M. Radmacher argued the cause for appellant - cross-respondent. With him on the briefs was McEwen, Gisvold, Rankin, Carter & Streinz, LLP.

Charles A. Ringo argued the cause and filed the briefs for respondents - cross-appellants.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

This appeal arises out of a breach of contract action. The dispute at trial centered on the validity and enforceability of a promissory note that plaintiff, an attorney, negotiated with defendants to secure payment for plaintiff's legal services. At the time the note was negotiated, plaintiff represented a corporation in which defendants were the sole shareholders. By signing the note, defendants personally obligated themselves to pay for the legal services to the corporation. Plaintiff sued to enforce the note; defendants, by various affirmative defenses, alleged that the note was unenforceable. Additionally, by way of counterclaim, defendants sued plaintiff for breach of fiduciary duty, seeking emotional distress and punitive damages. Plaintiff's breach of contract claim went to trial, and a jury returned a general verdict in defendants' favor. Plaintiff appeals; defendants cross-appeal. Combined, the appeals raise issues of entitlement to attorney fees and the adequacy of the counterclaims for punitive and emotional distress damages. We reverse on plaintiff's appeal, holding that defendants are not entitled to attorney fees. Otherwise, we affirm.

In early 1988, plaintiff was hired to represent a closely held corporation in a series of construction matters arising out of two state highway projects. The corporation's legal problems began when the projects' general contractors failed to pay the corporation. Subsequently, the corporation, facing serious cash-flow problems, as well as payment demands from its subcontractors, sought legal assistance. Defendants, a husband and wife, met with several attorneys, ultimately hiring plaintiff to represent the corporation with an initial $1,000 retainer. After the retainer was depleted, plaintiff and defendants orally agreed that plaintiff would continue representing the corporation. At that time, plaintiff knew that the corporation had cash flow problems and did not insist that the corporation stay current on the billings for plaintiff's legal services. However, on December 9, 1988, plaintiff revised the fee arrangement, requesting that the corporation sign a promissory note for $16,124.16. That note contained a clause personally obligating defendants for the debt, thus making them jointly liable with the corporation.

After defendants signed the note, plaintiff continued his representation. The corporation's billings for legal services continued to amass. Eventually, the corporation's disputes in connection with the construction projects led to a week-long jury trial in which plaintiff represented the corporation. Near the trial's end, just before closing arguments, plaintiff presented defendants with a second promissory note seeking to secure payment of his fees. That note, unlike the prior one, did not mention the corporation, and obligated only defendants for an additional $35,000 in unpaid legal fees. Defendants signed that note. The two notes contained similar provisions for payment of attorney fees resulting from a suit to enforce the notes. Some time after the litigation was completed, plaintiff demanded payment of the sums guaranteed by the notes, together with other past due amounts. Defendants refused to pay. Plaintiff then brought this breach of contract action on the notes and for collection of fees on an open account. Defendants counterclaimed for breach of fiduciary duty and negligence.[1]

Before trial, plaintiff moved to strike defendants' request for punitive and emotional distress damages on defendants' counterclaim in their amended answer, arguing that the pleadings failed to state facts sufficient to support those damage allegations. ORCP 21 E. The trial court granted that motion, striking the punitive damage allegation on the breach of fiduciary duty claim, but allowing defendants to replead the basis of their emotional distress damage request. Defendants then submitted a second amended answer, alleging with more particularity the factual basis of their breach of fiduciary duty claim and again requesting punitive and emotional distress damages. Plaintiff moved against that answer, asserting again that the facts pleaded did not support the requests for punitive and emotional distress damages. The trial court granted that motion. Later, plaintiff also moved for summary judgment on defendants' counterclaims on statute of limitations grounds, which the trial court denied. After voluntarily dismissing their negligence counterclaim, defendants then filed a third amended

---

[1] Defendants also asserted a counterclaim for violations of ORS 646.639, the Unlawful Debt Collection Act; however, they voluntarily dismissed that claim prior to trial.

answer in which they requested nominal damages of $100 as to each defendant on their breach of fiduciary duty claim. Plaintiff confessed judgment on that counterclaim. ORCP 73.

By the time the case went to trial, plaintiff declined to pursue the claim for payment under the second note for $35,000 and instead pursued only the claim on the first promissory note for $16,124.16. As to that first note, defendants conceded that they had signed it and that they had not paid the sums demanded by plaintiff. However, they raised three affirmative defenses that were submitted to the jury: estoppel, undue influence, and rescission. All three affirmative defenses were based on defendants' allegations that plaintiff had abused the client-attorney relationship of trust in obtaining defendants' signatures and personal commitment to pay the corporation's legal services debt. The jury returned a general verdict in defendants' favor. Defendants then sought to recover attorney fees under the attorney fees provision of the note, which the trial court granted.

■■ Plaintiff assigns error to the trial court's award of attorney fees to defendants. Specifically, plaintiff argues that "by disaffirming the contract in its entirety, [d]efendants waived their right to enforce the provision of the contract related to attorney fees." We review the court's determination on entitlement to attorney fees for errors of law. ORS 19.415. We agree that defendants' successful affirmative defense of rescission defeated the basis for the award.

The promissory note that plaintiff sought to enforce at trial contained this attorney fees provision:

> "In an event of suit or action to enforce payment of this note, promisor shall be liable for attorney fees and costs incurred in commencement and prosecution of such action or suit."

Although by its terms the provision grants a right to attorney fees only to the promisee (here plaintiff), the right is reciprocal by statute and can be enforced by either party. ORS 20.096(1).[2]

---

[2] ORS 20.096(1) provides:

"In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the

Here, plaintiff sued to enforce the note. Defendants conceded the existence of the note, but sought to avoid their obligations under it by raising the affirmative defenses of rescission, estoppel, and undue influence. Defendants prevailed on those affirmative defenses, and thus are the "prevailing parties" under ORS 20.096(1).

■    The problem for defendants, however, is that they lost their right to attorney fees under the contract by succeeding on their rescission defense. The law has been settled for many years that where a prevailing party's entitlement to attorney fees depends on the reciprocity provision of ORS 20.096(1), or is otherwise limited to an action to enforce a contract, that entitlement is extinguished by a successful rescission claim. *See, e.g., Pickinpaugh v. Morton*, 268 Or 9, 15-18, 519 P2d 91 (1974). The same is true of other claims or defenses that run to the existence of a contract, such as novation. *E.g., Witt v. Keller*, 104 Or App 257, 800 P2d 791 (1990), *rev den* 311 Or 166 (1991).

The rationale for the rule is that when a contracting party knows of facts that render the subject transaction voidable, that party may elect either to affirm the contract and be bound by it, or to disaffirm the contract and be reinstated into his or her precontractual position. *Pickinpaugh*, 268 Or at 17. Therefore, if a party successfully avoids contractual responsibility under a rescission theory, "the terms of the abrogated contract have no influence whatever upon the subsequent determination of the rights of the parties or the adjustment of matters growing out of it[.]" *Id.* (quoting 3 H. Black, *Rescission and Cancellation* § 583 at 1429-31 (1916)).

Defendants argue that the result should be different in this case because they raised rescission by way of affirmative defense rather than counterclaim. We fail to see any legal or logical basis for that distinction, however. If a party chooses to avoid its contractual obligations by disavowing the contract, how it goes about raising and prevailing on that avoidance claim is not significant. The substantive theory on

---

contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and disbursements."

which a party prevails, rather than the theory's procedural posture, controls. Thus, attorney fees have been denied to prevailing parties irrespective of whether they avoided a contract by initiating litigation, by counterclaiming, or by asserting an affirmative defense. *See, e.g., Niedermeyer v. Latimer,* 307 Or 473, 769 P2d 771 (1989) (suit to rescind contract); *Bodenhamer v. Patterson,* 278 Or 367, 378, 563 P2d 1212 (1977) (counterclaim for rescission); *John Deere Co. v. Epstein,* 91 Or App 195, 755 P2d 711 (1988), *aff'd on other grounds* 307 Or 348 (1989) (affirmative defense of nonexistence of contract); *Witt,* 104 Or App 257 (affirmative novation defense). Defendants rely on the dissent in *John Deere Co.,* which expressed reservations about the rule in the context of an affirmative defense based on a contention that no contract had ever been formed. Suffice it to say that the majority in *John Deere* did not share those reservations then, and we do not now.[3]

Defendants further contend that

"even if [the rule] did apply to the defense of an action, it would not apply here because we do not know that the contract was rescinded. Three affirmative defenses were submitted to the jury: rescission, undue influence, and estoppel. Since the jury's decision was set forth in a general verdict form, we cannot know which affirmative defense was the basis for the verdict."[4]

The fact that the jury returned a general verdict does not aid defendants. Defendants made no attempt at trial to segregate the jury's findings, either by using a special verdict, ORCP 61 B, or a general verdict accompanied by answers to interrogatories, ORCP 61 C. Instead, defendants presented three defenses to the jury, including rescission, argued that the evidence supported each, prevailed, and

---

[3] Defendants also rely on *Niedermeyer,* which they believe calls the holding in *John Deere* into doubt. *Niedermeyer,* however, involved a suit brought to rescind the contract, and thus the facts did not present and the court did not resolve the specific question at issue in this case. We do not read *Niedermeyer* as undermining prior cases in the area.

[4] Defendants do not contend that the jury's verdict might have been a general denial of a breach of contract because, as noted, defendants at trial effectively conceded the breach by acknowledging that they had signed the agreement and had failed to pay sums demanded by plaintiff.

accepted the benefit of the resulting verdict. Defendants, having espoused the sufficiency of the rescission defense, and having prevailed on a general verdict, are in no position now to argue that the verdict could not have been based on rescission. *See generally Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 609-13, 892 P2d 683 (1995) (party not entitled to take a position inconsistent with prior position successfully taken in judicial proceeding).

We therefore hold that defendants, by obtaining a jury determination that the promissory note was rescinded, are not entitled to attorney fees under the note. The trial court's order awarding defendants attorney fees under the contract must be reversed.[5]

■ We turn to the cross-appeal. Defendants cross-appeal from an order striking their claims for punitive and emotional distress damages on defendants' counterclaim for breach of fiduciary duty based on the $35,000 promissory note. ORCP 21 E.[6] In reviewing an order striking damage claims, we accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the nonmoving party; we ignore mere conclusions of law. *See Harding v. Bell*, 265 Or 202, 208-09, 508 P2d 216 (1973) (a "demurrer admits as true all facts well pleaded and all the intendments and inferences therefrom that can reasonably be drawn"). We then determine whether the complaint would support, as a matter of law, recovery of the claimed damages. *2-D's Logging v. Weyerhaeuser*, 53 Or App 677, 689, 632 P2d 1319, *rev den* 292 Or 109 (1981) (punitive damages); *Collver v. Salem Insurance Agency, Inc.*, 132 Or App 52, 64-66, 887 P2d 836 (1994), *rev den* 320 Or 598 (1995). (emotional distress damages).

---

[5] Because we hold that any award of attorney fees was improper, we do not reach plaintiff's contention that the award of fees was excessive.

[6] As a threshold matter, plaintiff urges that defendants may not cross-appeal on the breach of fiduciary duty judgment because defendants agreed to judgment by stipulation (ORCP 67 F) rather than judgment by confession (ORCP 73). Plaintiff relies on ambiguity in the transcript on that point. That ambiguity, however, was later eliminated through a successful motion to correct the transcript. As the record now stands, it is clear that plaintiff confessed rather than stipulated to judgment. Consequently, we have authority to review defendants' cross-appeal. ORS 19.245.

■■    We begin with defendants' argument that the trial court erroneously struck their request for emotional distress damages,[7] because absent compensatory damages, punitive damages generally are not recoverable. *Klinicki v. Lundgren*, 298 Or 662, 686, 695 P2d 906 (1985). Defendants argue that because they pleaded an intentional tort and an invaded interest of "paramount importance"— *viz.*, a client's right to rely on an attorney's unquestioned loyalty — emotional distress damages are justified.[8]

■■    The general rule in Oregon is that a person cannot recover for emotional distress in the absence of a physical injury. *Hammond v. Central Lane Communications Center*, 312 Or 17, 22-23, 816 P2d 593 (1991). Physical injury is not required, however, in three exceptional circumstances: (1) there is a specific intent to inflict emotional distress; (2) there is intentional misconduct by a person in a position of responsibility and with knowledge that it would cause "grave distress;" or (3) there is conduct that, even if negligent, infringes upon a "legally protected interest apart from causing the claimed distress." *Id. See generally Curtis v. MRI Imaging Services II*, 148 Or App 607, 614, 941 P2d 602 (1997), *aff'd on other grounds* 327 Or 9 (1998). As to the third exception, "the critical inquiry becomes whether the kind of interest invaded is of sufficient importance as a matter of policy to merit protection from emotional impact." *Hilt v. Bernstein*, 75 Or App 502, 515, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986).

Here, defendants contend that their pleading meets either the second or third exception to the general rule of recovery for emotional distress damages. We find neither

---

[7] We note that in defendants' second amended answer, defendants characterized their emotional damage request as one for "economic" damages. However, at a hearing on the motion to strike, defendants orally corrected their error and thereafter the court treated defendants' request as one for emotional distress damages.

[8] The parties dispute whether plaintiff and defendants in fact had an attorney-client relationship. *See generally In re Brown*, 326 Or 582, 956 P2d 188 (1998) (discussing circumstances in which an attorney has a fiduciary duty to the shareholders of a corporate client). For purposes of our analysis, we assume that a fiduciary relationship existed.

theory supported by the facts alleged in defendants' counterclaim, however. As to the second exception, defendants' complaint was inadequate to plead an intentional breach of fiduciary duty. Although defendants alleged that plaintiff "presented" a note to defendants and "placed" his interests ahead of defendants, those allegations, if proved, would show only that plaintiff engaged in conduct that breached his fiduciary duty. Nothing in the counterclaim alleges that plaintiff was aware that he owed a fiduciary duty to defendants as well as to the corporation and that he intentionally or knowingly acted in disregard of that duty. Absent any such allegation, defendants' counterclaim sounded only in negligence. Moreover, defendants also failed to allege that plaintiff acted with knowledge that his conduct would cause defendants "grave distress."

In an effort to invoke the third exception, defendants characterize the invaded interest as "the client's right to rely on [the] attorney's unquestioned loyalty," arguing that emotional distress damages are recoverable because that interest is "of paramount importance." For present purposes, we are willing to assume (although we do not decide) that defendants pleaded a separate legally protected interest. *See generally Curtis*, 148 Or App at 614-18 (discussing separate legally protected interest exception). Nevertheless, because the underlying loss—*i.e.*, defendants' personal liability for the corporation's debt—is chiefly an economic one, the "invasion is not of sufficient importance to warrant [an] award of damages for emotional distress[.]" *Collver*, 132 Or App at 66; *Hilt,* 75 Or App at 515. Thus, the trial court did not err in striking defendants' request for emotional distress damages.

Punitive damages are not recoverable in this case without the emotional distress damages.[9] *Klinicki*, 298 Or at

---

[9] Defendants eventually recovered only nominal damages of $100 each on their counterclaim, and then only pursuant to the confession of judgment by plaintiff, rather than a jury award. We question whether a nominal damages award arrived at through confession of judgment can provide a basis for a further award of punitive damages. *See Lane County v. Wood*, 298 Or 191, 691 P2d 473 (1984) (punitive damages award must be supported by award of actual damages, except in exceptional cases, such as where jury finds a violation of a duty of trust by a public official). Even if it does, however, defendants did not plead nominal damages until after the punitive damages request was stricken.

686-88 (absent breach of public trust or case in which damages are presumed, proven compensatory injury must underlie award of punitive damages). We therefore affirm the trial court's decision to strike the punitive damages request as well, without deciding whether the allegations of the counterclaim were adequate to support punitive damages.[10]

On appeal, judgment for attorney fees vacated; affirmed on cross-appeal.

---

[10] On the cross-appeal, plaintiff cross-assigns error, arguing that defendants' counterclaim for breach of fiduciary duty was barred by the statute of limitations. Plaintiff expressly conditions the cross-assignment on the cross-appeal and offers it only as an alternative basis for affirming the judgment if defendants prevail on the cross-appeal. Thus, because we affirm on the cross-appeal, we do not have to reach the cross-assignment.