Argued and submitted July 22, reversed and remanded on appeal; reversed and remanded in part on cross-appeal; otherwise affirmed November 25, 1998, petition for review denied March 23, 1999 (328 Or 365)

Jo RR McCULLOCH,
Personal Representative and Beneficiary of
the Estate of Ladelle K. McCulloch,
*Respondent - Cross-Appellant,*

*v.*

PRICE WATERHOUSE LLP,
a Delaware general limited liability partnership,
and David G. Efurd,
*Appellants - Cross-Respondents,*

*and*

Timothy R. SLAPNICKA,
Donald L. Irving, John Kretchmer,
Bruce Shepherd, and Roy E. Stowd, Jr.,
dba Price Waterhouse, an Oregon partnership,
*Defendants.*

(9508-05814; CA A95172)

971 P2d 414

Per A. Ramfjord argued the cause for appellants - cross-respondents. With him on the briefs were Keith M. Garza, Hilary K. Krane, Charles F. Adams and Stoel Rives LLP.

Michael A. Lehner argued the cause for respondent - cross-appellant. With him on the briefs was Lehner, Mitchell, Rodrigues & Sears.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

This appeal by defendants is from a judgment for plaintiff for damages for accounting malpractice. Defendants assign error, in part, to the trial court's failure to submit to the jury all of defendants' allegations against plaintiff of comparative fault and the failure to mitigate damages. Also, defendants assign error to the trial court's failure to rule that the recovery of damages for interest is precluded as a matter of law. Plaintiff cross-appeals. Plaintiff assigns error to the trial court's grant of defendants' motion for summary judgment on plaintiff's Unlawful Trade Practices claim and defendants' motions to strike plaintiff's claims for punitive and emotional distress damages. We reverse on appeal and reverse, in part, on cross-appeal.

Plaintiff is the personal representative and the beneficiary of his mother's estate. Defendants are an accounting firm and an accountant working for that firm.[1] Plaintiff hired defendants to help with the filing of tax returns and to assist with other accounting issues related to the estate. After the tax returns were filed, problems arose that resulted in assessments by the Internal Revenue Service (IRS), including penalties and interest. Eventually, plaintiff filed a complaint against defendants for damages arising from the assessments that included allegations of negligence, breach of fiduciary duty and unlawful trade practices.

Defendants' answer to plaintiff's complaint included these affirmative defenses:

"Defendants allege that plaintiff is comparatively at fault and/or contributorily negligent for all injuries asserted and, therefore, is not entitled to recovery or must have any recovery reduced in accordance with his proportional fault.

"Defendants allege that plaintiff failed to mitigate any damages or avoid any negative consequences of defendants' actions and, therefore, is not entitled to any recovery or

---

[1] Additional defendants were dismissed at various stages in the proceedings and any issues related to them are not involved in this appeal.

must have any recovery reduced to the extent of his failure to mitigate." (Headings omitted.)

Plaintiff did not move to strike or to make more definite and certain defendants' affirmative defenses, and the matter went to trial. At the close of defendants' case, but before plaintiff called rebuttal witnesses, the trial court requested that defendants reduce to writing those acts or omissions that they contended were the basis for their allegations.[2] The trial court's request came after several discussions with the parties' attorneys about the format and content of the jury instructions. Defendants complied with the court's direction and submitted a list of six specifications of acts or omissions that they contended were encompassed by the allegations. The specifications included specification number 3: "Misrepresenting facts and failing to engage adequate representation during the May 10, 1995 IRS Appeals Hearings Conference," and specification number 6: "Failing to avoid portions of the failure to file and failure to pay penalties by correcting the IRS's penalty calculations."

The trial court refused to submit specifications 3 and 6 to the jury. It explained:

"Had the defendants made this specification of fault on their own at the beginning of the case, I would be giving it. But I don't think it's fair to get this specific and this refined after argument.

"Now, those points, 3 and 6, were argued to the jury, and they know about it, and they know defendants contend they are important. And they could very well play in the jury's assessment of damages. But my decision not to give 3 and 6 as specifications of fault has more to do with the fact that defendants never specified them in the beginning than it does anything else."

Ultimately, the trial court gave the jury a "Summary of Claims" as part of the jury instructions that included only

---

[2] ORCP 21 D provides, in part:

"[U]pon the court's own initiative at any time, the court may require the pleading to be made definite and certain by amendment when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge, defense, or reply is not apparent."

the other specifications. The trial court also instructed the jury:

> "Likewise, for the Defendants to prevail on their claims that [plaintiff] was negligent in causing or in increasing the damage, they have to prove by a preponderance of the evidence at least one of the four things contended was negligent on his part and that that was a substantial factor in causing damage."

ORCP 23 B provides, in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings..Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made * * * but failure so to amend does not affect the result of the trial of these issues."

■ A refusal to submit a party's theory of the case or defense to the jury is error when there is any evidence, however slight, from which reasonable minds could find for that party. *Snabel v. Barber et al.*, 137 Or 88, 95, 300 P 331 (1931); *Mounts v. Knodel*, 83 Or App 90, 97, 730 P2d 594 (1986). The record demonstrates that the May 10 conference mentioned in specification 3 was the centerpiece of plaintiff's case from opening statements through closing arguments. Plaintiff's witnesses were cross-examined about the facts presented by plaintiff and his representative to the IRS at that conference. In addition, defendants presented evidence calling into question the witnesses' testimony and the lack of professional credentials possessed by plaintiff's representative at the meeting with the IRS. Plaintiff made no objections to the introduction of evidence by defendants on these subjects, nor did plaintiff object when defendants' expert testified to an error in the IRS penalty calculations. In fact, plaintiff called his expert back as a rebuttal witness to testify on that subject.

■ The trial court correctly acknowledged that there was evidence on the issues raised under the two excluded specifications. However, it erred under ORCP 23 B when it declined to submit them to the jury. The import of ORCP 23 B is that even if issues are not framed by a pleading, they

should be submitted to the jury when the parties have expressly or impliedly consented to litigating them. Here, both parties offered evidence on the issues later identified as specifications 3 and 6, and the trial court erred by not submitting those issues to the jury. Although the issues were argued by the parties to the jury, the court's instruction that defendant's claims of comparative fault and the failure to mitigate damages were limited to the other four specifications could likely have affected the jury's result. Because defendants were deprived of the submission to the jury of a material part of the theory of their case by the court's ruling, they are entitled to a new trial.

■    Defendants' third, fourth, and fifth assignments of error concern whether the interest assessed against plaintiff by the IRS is recoverable as damages from defendants. This issue is one of first impression in Oregon. Defendants argue that the majority of courts that have considered the issue have held that the recovery of damages for the interest is precluded as a matter of law and that we should adopt the majority rule. Because the issue of whether plaintiff can recover damages for the interest will arise again on retrial in the event that defendants are found liable, we address the issue.

■■    In general, damages in a negligence claim must flow as "a natural and continuous sequence, uninterruptedly connecting the breach of duty with the damage, as cause and effect." *Chambers v. Everding & Farrell*, 71 Or 521, 532, 143 P 616 (1914) (quoting Shearman & Redfield, *Negligence* § 5 (6th ed)). The policy underlying the assessment of damages is that plaintiff is entitled to recover only such sums as will compensate him for the loss suffered as a result of defendants' wrong. *Yamaha Store of Bend, Oregon, Inc. v. Yamaha Motor Corp.*, 310 Or 333, 344, 798 P2d 656 (1990), *modified on other grounds* 311 Or 88, 806 P2d 123 (1991) (citing *Budd v. Multnomah St. Ry. Co.*, 15 Or 413, 419, 15 P 659 (1887)).

We have twice considered similar issues. In *Hoage v. Westlund*, 43 Or App 435, 602 P2d 1147 (1979), the seller of real property had agreed with the buyer that the accrued taxes would be prorated as of the date of the sale. The title company handling the transaction was instructed to prorate the taxes in accordance with the parties' agreement but

failed to do so. The seller paid the taxes and brought an action against the buyer to recover the amounts that he had paid for the buyer's share. The buyer then brought a cross-claim against the title company. One of the issues was whether the buyer could recover interest from the title company that he owed on the amount paid by the seller. "Interest is money paid for the use of money." *Id.* at 441. We held that the buyer could not recover against the title company because the buyer had the use of the seller's money for three years after the seller paid the buyer's share of the taxes. The cost to the buyer of that use was not attributable to the title company's failure to prorate the taxes but to the buyer's election to use the seller's money.

In *Simpson v. State of Oregon*, 105 Or App 523, 805 P2d 734 (1991), a court clerk failed to send notice of a judgment to the plaintiff. Interest accrued on the amount of the judgment that the plaintiff owed. The plaintiff brought a negligence claim against the state, seeking to recover only the interest that had accrued during the time between the date of judgment and when the plaintiff received notice. The trial court found for the plaintiff, and we affirmed.

We distinguished our holding in *Hoage*. We said that:

> "Plaintiff does not argue that he is entitled to the accrued interest as compensation for the use of his money. Rather, he argues that he is entitled to the accrued interest, because it is damage resulting directly from defendant's negligence." *Simpson*, 105 Or App at 526.

In other words, the plaintiff in *Simpson* became liable for a sum, *i.e.*, the accrued interest, that he would not otherwise have incurred but for the negligence of the state. We held that, under those circumstances, the plaintiff could recover damages based on the accrued interest. In contrast, the title company's negligence did not directly cause the buyer's liability for interest on the amount that the seller had paid in *Hoage*. Rather, the buyer's delay in reimbursing the seller was the direct cause of the accrual of interest.

In this case, plaintiff seeks to recover as damages the interest charged by the IRS. He argues that the interest

assessment is directly attributable to defendants' negligence and that our holding in *Simpson* controls. Defendants counter:

> "Like [the buyer in *Hoage*], [plaintiff] had the 'use of the [tax owing but not paid during the entire period the interest accrued] and, therefore, should not be allowed to recover' the interest he owes the IRS * * * from [defendants]."

Defendants point out that plaintiff had not paid the interest assessed as of the trial date except for the estimated payments made in 1992 and a later payment in 1995. However, there is a critical difference between this case and *Hoage*. In *Hoage*, the buyer sought to recover the cost of the use of a third-party's money from the negligent party. Here, plaintiff seeks to recover damages for interest that was assessed as a direct result of defendants' negligence. In that respect, this case is similar to *Simpson*, except that plaintiff seeks to recover also the principal amount of the taxes.

Defendants also argue that we should follow the lead of other jurisdictions that have held that a taxpayer who pays too little taxes because of a mistake or wrongdoing of another cannot recover damages for accrued interest from the wrongdoer because a windfall to the taxpayer would result. Included in those jurisdictions is the State of Washington. In *Leendertsen v. Price Waterhouse,* 81 Wash App 762, 766, 916 P2d 449, 451, *rev den* 130 Wash 2d 1009, 928 P2d 412 (1996),[3] the Court of Appeals observed:

> "In *Freschi v. Grand Coal Venture,* 767 F.2d 1041 (2d Cir. 1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986), plaintiff brought action against defendants for violating federal securities laws by marketing fraudulent tax shelters. The court held that interest and penalties paid to the IRS were not recoverable consequential damages because such monies constituted a return by the plaintiff to the IRS 'of what would otherwise

---

[3] In *Leendertsen,* the plaintiffs received approximately $400,000 in excessive tax refunds because of the negligence of their accountants. After the IRS discovered the mistakes in the tax returns, the plaintiffs were required to pay the IRS $634,600, which included interest. They sued, claiming that the defendants had negligently promised them that the tax refunds could be used in their new businesses. They sought as part of their damage both the tax and the interest that they owed to the IRS.

be a windfall resulting from his opportunity to use money to which he was not entitled.' *Freschi*, 767 F.2d at 1051; *see also Stone v. Kirk*, 8 F.3d 1079 (6th Cir. 1993) (plaintiffs not entitled to recover interest paid on back taxes because plaintiffs had the use of the tax money). Similarly, when clients sued their investment advisor for negligent misrepresentation, the Alaska Supreme Court held that the clients could not recover interest paid because the clients 'had the use of these monies and, presumably, were able to earn interest while they held it.' *Orsini v. Bratten*, 713 P.2d 791, 794 (Alaska 1986); *accord Gudschinsky v. Hartill*, 815 P.2d 851 (Alaska 1991). Likewise, in *Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67, 559 N.Y.S.2d 312 (1990), investors in a tax shelter brought a fraud action against law firms that prepared erroneous tax opinion letters. Citing *Freschi*, the court precluded recovery of interest, reasoning that 'the equities militate in favor of barring recovery of such interest rather than allowing plaintiffs the windfall of both having used the tax monies for seven years and recovering all interest thereon.' *Alpert,* 160 A.D.2d at 72, 559 N.Y.S.2d 312."[4]

The court in *Leendertsen* concluded:

"First, the [plaintiffs'] independent business judgment as to where to invest the money breaks the legal causation element. * * * Legal causation is largely a policy question as to how far the consequences of a defendant's acts should extend. *Hartley v. State*, 103 Wash. 2d 768, 779, 698 P.2d 77 (1985). Here, the speculative nature of causation, coupled with the difficulty of proving where the money was invested, weigh against a finding of proximate cause. * * * Second, damages from poor investing are too speculative to blame upon the defendants. The [plaintiffs] had the value of the use of the money during that time and would be unjustly enriched to recover that interest from another source. Accordingly, we hold that interest owed to the IRS as a result of an underpayment of taxes is not recoverable from the defendants." 81 Wash App at 767-68 (internal footnote omitted).

---

[1] The Washington court also discussed an Oklahoma case, *Wynn v. Estate of Holmes*, 815 P2d 1231, 1235 (Okla App 1991), that held that the interest owed to the IRS was recoverable because of the collateral source rule, which provides that a wrongdoer's liability cannot be offset by an independent source compensating the plaintiff for the same injury. The *Leendertsen* court ruled that the collateral source rule was not significant to its analysis.

We understand the Washington court's reasoning to embody two concerns: (1) a windfall: *i.e.*, the taxpayer could recover damages for interest and at the same time a return from the use of the monies that could have been applied to the tax liability; and (2) the speculative nature of the causation of the damage. We conclude that neither concern supports the absolute bar to recovery of damages arising from accrued interest on the facts of this case under Oregon law. Whether a windfall occurs will be dependent on the individual taxpayer's circumstances in each case. Not all taxpayers when faced with a tax assessment find themselves in the same financial condition. It could be that a taxpayer will not have available funds to invest while interest is accruing on the tax obligation. Moreover, many of the federal cases relied on by the Washington court appear to be concerned about awarding damages for accrued interest in addition to prejudgment interest on the amount represented by the unpaid taxes. That issue is not involved in this case.

■   As to the purported speculative nature of the causation of damages, we think a proper analogy can be drawn to the rule of damages regarding proof of loss of future profits with reasonable certainty under Oregon law. In that context, the issue of whether a business, even an untried venture, will produce profits in the future is generally for the trier of fact. Courts are to intervene and take the issue from the jury only when it can be said that the evidence is "clearly insufficient" and that no reasonable person could be persuaded of the validity of the claim on the evidence presented. *Welch v. U.S. Bancorp*, 286 Or 673, 704-05, 596 P2d 947 (1979). We are not unmindful of the difficulty in litigating these kinds of issues. However, we note that plaintiffs retain the burden of proof of the causation and amount of each claim of damage by a preponderance of the evidence and that, to the extent that defendants choose to contend that plaintiffs have failed to mitigate their damage, discovery is available under the rules of Oregon Civil Procedure to augment their allegations.[5] Accordingly, we decline to adopt the rule that defendants propose. We hold that, under the circumstances of this case,

---

[5] The general rule is that a wrongdoer has the burden of proof to show that the plaintiff failed to take reasonable measures to mitigate damages or avoid consequences. *Enco, Inc. v. F.C. Russell Co.*, 210 Or 324, 339, 311 P2d 737 (1957).

plaintiff is not barred as a matter of law from seeking damages based on the interest obligation that he owes to the IRS.

■ On cross-appeal, plaintiff makes three assignments of error. First, plaintiff asserts that the trial court erred in granting defendants' motion for partial summary judgment on plaintiff's claim under the Unfair Trade Practices Act (UTPA). ORS 646.605 *et seq.* On review of a summary judgment, we determine whether there exists a genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. ORCP 47 C. We review the record in the light most favorable to plaintiff. *Id.*

Plaintiff's complaint alleges, in part:

"Defendants' conduct constitutes unlawful trade practices and violates the provisions of ORS §646.608 (c) (e) (g) (q) (t) in the following particulars:

"a) caused plaintiff confusion as to whether the IRS had reviewed and accepted the federal estate tax returns as filed or/and whether the Oregon Department of Revenue had reviewed and accepted the Oregon inheritance tax returns as filed (c);

"b) misrepresented to plaintiff that the IRS had accepted plaintiff's federal estate tax returns as filed (e);

"c) misrepresented that plaintiff's tax returns were of a particular standard of quality when in fact they were not (g);

"d) promised to prepare and file the decedent's federal estate tax and Oregon inheritance tax returns before the filing deadlines and did not (q);

"e) did not disclose to plaintiff material defects in the returns and the refusal of the IRS and Oregon Department of Revenue to accept the returns as filed (t)."

Defendants sought summary judgment on plaintiff's UTPA claim on the ground that "the documentary evidence conclusively establishes that plaintiff's claim is barred by the UTPA's one-year statute of limitations." Plaintiff filed his claim on August 21, 1995. ORS 646.638(6) provides that actions brought under the UTPA must be "commenced within one year from the discovery of the unlawful method, act or practice." The period of limitation begins to run when

the plaintiff knows or should have known of the alleged misrepresentations. *Bodin v. B. & L. Furniture Co.*, 42 Or App 731, 734, 601 P2d 848 (1979). We apply a two-step analysis to determine whether plaintiff should have known of the alleged misrepresentations before August 21, 1994: "First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry * * *.' [Second] [i]f plaintiff had such knowledge, it must also appear that 'a reasonably diligent inquiry would disclose' the fraud." *Mathies v. Hoeck*, 284 Or 539, 543, 588 P2d 1 (1978) (citations omitted).

The first step focuses on what information plaintiff had before August 21, 1994. Defendants point to correspondence to plaintiff from the IRS and defendants that informed plaintiff that the returns were not filed timely, that various positions taken in those returns were being challenged and that the returns were being audited. The correspondence begins in December 22, 1992, and culminates with a bill from defendants on August 15, 1994, for "Internal Revenue Service audit issues * * * and the related proposed federal tax deficiency assessments."

Plaintiff claims that he became aware of defendants' misrepresentations and the true state of affairs regarding the tax returns during a meeting in December 1994 with the IRS. His affidavit states that, until that meeting, he had relied on defendants' representations that the assessment of penalties or interest reflecting a late filing was a mistake by IRS. He avers that when he raised concerns about the correspondence that he had received, defendants represented to him that they were continuing to take care of any problems and that everything was under control. Plaintiff argues that, because he reasonably relied on defendants' representations and assurances, there is a genuine issue of material fact about whether he acted with reasonable diligence under the second step of the inquiry.

In *Gaston v. Parsons*, 318 Or 247, 864 P2d 1319 (1994), the court addressed the issue of when the statute of limitations begins to run in a medical negligence action. The applicable statute, ORS 12.110(4), required that actions be "commenced within two years from the date when the injury

is first discovered or in the exercise of reasonable care should have been discovered." The court interpreted the word "injury" in the statute to consist of three elements: harm, causation, and tortious conduct. The court explained that whether a reasonable person should be aware of tortious conduct could be a question of fact depending on the relevant circumstances. The court's language is instructive:

> "Assurances made by the attending physician may also have a bearing on whether a reasonable person would be aware of a substantial possibility of tortious conduct. * * * A physician's assurances may be particularly influential on a plaintiff because the physician-patient relationship is 'a relationship of trust and confidence * * * in which continued treatment or other resort to the skills of the defendant is required.' *Cavan v. General Motors*, 280 Or 455, 458, 571 P2d 1249 (1977). If the physician makes a representation on which a plaintiff reasonably relies, it could have the effect of delaying a reasonable person from becoming aware of a substantial possibility of tortious conduct." *Gaston*, 318 Or at 257.

Defendants respond that the language in *Gaston* has no application to this case because the UTPA is not concerned with the discovery of an injury or of a legally cognizable harm, but rather the discovery of an unlawful method, act or practice. We disagree with that assertion. In the context of the facts of this case, plaintiff had a relationship with defendants that is analogous to the physician-patient relationship in *Gaston*. Necessarily, that relationship required plaintiff to rely on defendants' expertise and their representations regarding the import of the IRS's actions. Even though the correspondence was sufficient to put plaintiff on notice before August 1994 that the returns were not filed on time and that the IRS had not accepted plaintiff's return as filed, there is a genuine issue of material fact about whether plaintiff should have reasonably relied on defendants' representations that the IRS's positions were mistaken and would be rectified. A trier of fact could conclude from the evidence in the summary judgment record that the delay in filing the complaint was due to plaintiff's reasonable reliance on defendants' representations. Therefore, the trial court erred in granting defendants' motion for summary judgment on plaintiff's UTPA

claim on the ground that it was barred by the statute of limitations.[6]

At the close of plaintiff's case, the trial court withdrew plaintiff's request for punitive damages from the jury's consideration. Plaintiff cross-appeals from that ruling. As the result of our disposition of defendants' appeal, this case will have to be retried. A ruling on whether or not plaintiff offered sufficient evidence to warrant the submission of the request to the jury on this record would be solely advisory, because there will be a new evidentiary record on retrial. Therefore, we decline to reach plaintiff's assignment of error regarding punitive damages.

■ Plaintiff also assigns error to the trial court's grant of defendants' motion to strike plaintiff's claim for damages for emotional distress caused by defendants' negligence and breach of fiduciary duty. ORCP 21 E. Because this issue concerns a question of law that will arise on retrial, we decide the issue. Plaintiff's complaint alleges, in part:

> "[P]laintiff has suffered severe emotional distress in the form of fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, nausea, anxiety and sleeplessness for which he should be compensated $500,000 in general damages and in excess of $10,000 for special medical expenses."

Defendants argue that damages for emotional distress are not available, as a matter of law, in cases of negligence and breach of fiduciary duty when the only underlying injury is economic. Plaintiff responds that the law should "permit damages for emotional distress whenever a defendant is found to have recklessly violated fiduciary obligations which it knew or should know would cause emotional distress."

---

[6] Defendants also argue on appeal that plaintiff's complaint failed to state a claim because the UTPA does not apply to professional malpractice. However, defendants did not move to dismiss under ORCP 21 and did not raise that ground in their written motion for summary judgment. Even though the issue was discussed at oral argument on the motion for summary judgment, we are not persuaded by the record before us that plaintiff and the trial court had an adequate opportunity to address the issue. Accordingly, we conclude that that issue is not preserved for the purpose of appellate review. ORAP 5.45(2).

In reviewing an ORCP 21 ruling, we accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the nonmoving party; then, we determine whether the complaint will support, as a matter of law, the recovery of the claimed damages. *Bennett v. Baugh*, 154 Or App 397, 404, 961 P2d 883 (1998). Plaintiff seeks damages for emotional distress based on defendants' failure to file proper and timely returns, their failure to advise plaintiff to terminate the trust and their alleged misrepresentations to plaintiff regarding those matters.[7] Damages for the negligent infliction of emotional distress have been allowed under limited circumstances. In *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558-59, 652 P2d 318 (1982), the court explained:

> "If there are few causes of action for psychic or emotional harm as such, the reason is not found in objections to monetary damages for harm of that nature. The reason may be found by focusing, not on the nature of the plaintiff's loss, but on the source and scope of the defendant's liability. This court has recognized common law liability for psychic injury alone when defendant's conduct was either intentional or equivalently reckless of another's feelings in a responsible relationship,[8] *or when it infringed some legally protected interest apart from causing the claimed distress, even when only negligently.* The court has found infringements of legal rights in an invasion of privacy, in the negligent removal of the remains of a deceased spouse, and in the negligent delivery of a passport that allowed plaintiff's child to be taken from this country. But we have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest." (Emphasis added; internal footnotes and citations omitted.)

---

[7] Plaintiff does not appeal from the trial court's ORCP 21 dismissal of his claim for intentional or reckless infliction of emotional distress based, in part, on these representations.

[8] In *McGanty v. Staudenraus*, 321 Or 532, 545-51, 901 P2d 841 (1995), the court explained that the existence of a responsible relationship affects the "conduct" element of the tort of intentional infliction of emotional distress and not the "intent" element.

Accordingly, we focus on the source and scope of defendants' liability. Assuming, without deciding, that defendants' conduct, as alleged, infringed on a legally protected interest of plaintiff, we hold that the infringement of that interest is not of sufficient importance to warrant an award of damages for emotional distress. The underlying interest arises from the relationship between plaintiff as a client and defendants as accountants. Even though the relationship is fiduciary in nature, it is fundamentally an economic one. It is not similar to the interests that the court held cognizable for purposes of emotional damages in *Norwest*. *See also Bennett*, 154 Or App at 406 (holding that emotional distress damages related to an attorney-client relationship was properly stricken because the underlying interest was chiefly economic); *Collver v. Salem Insurance Agency, Inc.*, 132 Or App 52, 64-66, 887 P2d 836 (1994), *rev den* 320 Or 598 (1995) (holding that emotional distress damages related to a negligence claim by an insured against an insurance agent should have been stricken). The trial court did not err in granting defendants' motion to strike.

Reversed and remanded on appeal; summary judgment on UTPA claim reversed and remanded on cross-appeal; otherwise affirmed.