Argued and submitted May 2, reversed and remanded November 20, 1984

# LANE COUNTY,
*Petitioner on review,*

*v.*

# WOOD et al,
*Respondents on review.*

(TC 81-4-109; CA A23127; SC S30315)

691 P2d 473

William F. Frye, Special County Counsel, Eugene, argued the cause and filed the petitions for petitioner on review. With him on the briefs was Gregory E. Veralrud, of Frye, Hanna & Veralrud, Eugene.

Donald D. Diment, of Diment & Billings, Eugene, argued the cause for respondent on review Wood and joined in the response to the petition for review for respondents on review. With him on the brief was Glen Lasken, Certified Law Student.

Barbara S. Fishleder, of Altstatt & Doyle, P.C., Eugene, argued the cause for respondent on review Safley and joined in the response to the petition for review for respondents on review.

William G. Wheatley, of Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene, filed a brief for respondent on review Aetna Casualty and Surety Company and joined in the response to the petition for review of respondents on review.

Harold D. Gillis, of Harold D. Gillis, P.C., Eugene, filed a brief for respondent on review Phelps and joined in the response to the petition for review of respondents on review.

Before Peterson, Chief Justice, and Lent, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

### JONES, J.

This action was brought by plaintiff Lane County against defendants Robert E. Wood, a former county commissioner, Aetna Casualty & Surety Company as surety on an employes faithful performance bond issued to the county, Michael J. Safley and the estate of Alfred K. Phelps, deceased. The county's claims arose out of a land exchange occurring in the summer of 1978.

In August of 1978, plaintiff Lane County entered into an agreement with defendant Phelps to exchange two parcels of county land, referred to by the parties as the 30th Avenue property and the County Farm Road property, for defendant Phelps' interest in the Willamette Christian Center, adjacent to the Lane County Fairgrounds. With the agreement of the board of county commissioners, defendant Wood was given the responsibility to work out the details of obtaining this property. Appraisals of the three properties set the value of the 30th Avenue property at $365,700, the County Farm Road property at $596,160, and the Willamette Christian Center at $961,400.

Prior to the exchange, defendant Safley, a real estate broker who had obtained an interest in the Willamette Christian Center, and defendant Phelps arranged to sell the 30th Avenue property to Bauku, Inc., for $800,000. Upon execution of the exchange agreement with Lane County, defendants Phelps and Safley completed the sale of the 30th Avenue property to Bauku, Inc., on August 16, 1978, for $800,000. At about the same time defendants Phelps and Safley arranged and consummated a sale of the County Farm Road property to Wildish Land Co. for $523,790. As a result of these transactions, Phelps and Safley received profits totalling $465,087.23 ($285,640.99 to Phelps; $179,446.24 to Safley). Phelps received an additional $25,879.89 in the form of real and personal property.

During the critical time leading up to consummation of the exchange agreement, defendant Wood, unknown to the other commissioners, was in frequent communication with both Phelps and Safley. According to plaintiff, it was not until after Wood left office at the end of 1978 that the true extent of his close ties with Phelps and Safley became known. Phelps had provided financial support for Wood's campaign for

governor. Safley had contributed to Wood's campaigns for a city council seat and for a position on the board of county of commissioners. He also was the largest contributor to Wood's campaign for Congress in 1978. In addition, Safley had agreed to hire Wood in his real estate office when Wood's term as commissioner expired and expected Wood to earn as much as $50,000 a year.

Within a week after the land exchange agreement was consummated, Wood and his wife received from Safley an all-expense-paid trip to Reno. In October he received certain items of furniture as gifts from Safley.

Trial of the case commenced September 8, 1981. Lane County proceeded to trial charging Wood with three claims: breach of fiduciary duty, breach of statutory duty and fraud.

Lane County alleged that Safley and Phelps had induced Wood to breach his official duties by agreeing that in exchange for gifts, promises of gifts, campaign contributions and future employment Wood would use his official position and his confidential relationship with Lane County as a commissioner to arrange for an exchange of property between Lane County and Safley and Phelps whereby Safley and Phelps would profit. Lane County also alleged that Safley and Phelps conspired with Wood to defraud Lane County.

Lane County further alleged Aetna's liability on the faithful performance bond for losses caused to plaintiff arising from Wood's misconduct in office.

The county sought general damages from Wood, Safley and Phelps in the amount of $363,600 for its loss on the property exchanged due to these defendants' conspiracy, together with $100,000 punitive damages each from Wood and Safley. It sought $100,000 from Aetna, the amount of the faithful performance bond, plus reasonable attorney fees.

After 32 trial days before a jury, a verdict was returned in favor of Lane County and against all defendants. The special verdict form contained the following questions and answers:

"1.     Is defendant Robert E. Wood liable for damages to Lane County for breach of fiduciary duties?

Answer     __YES__
              (yes or no)

"2.     Is defendant Robert E. Wood liable for damages to Lane County for breach of statutory duties?

Answer     __YES__
              (yes or no)

"3.     Is defendant Robert E. Wood liable for damages to Lane County for fraud?

Answer     __NO__
              (yes or no)

"If the jury answers the first three questions 'no' this ends your deliberations. You would not answer the remaining questions. This result is a verdict against plaintiff and in favor of all defendants.

"If the jury answers any one or more of the first three questions 'yes' then the jury is to answer the remainder of questions herein.

"4.     Was defendant Robert E. Wood an 'employee' and covered under the insurance policy issued to Lane County by defendant Aetna Casualty and Surety Company?

Answer     __YES__
              (yes or no)

"5.     Is defendant Michael J. Safley liable for damages to Lane County for inducing defendant Wood to breach his official duties?

Answer     __YES__
              (yes or no)

"6.     Is defendant (estate of Alfred K.) Phelps liable for damages to Lane County for inducing defendant Wood to breach his official duties?

Answer     __YES__
              (yes or no)

"7.     Is defendant Michael J. Safley liable for damages to Lane County for conspiracy to defraud?

Answer     __NO__
              (yes or no)

"8.     Is defendant (estate of Alfred K.) Phelps liable for damages to Lane County for conspiracy to defraud?

Answer     __NO__
              (yes or no)

"9.   What are the damages sustained by Lane County resulting from the foregoing conduct of defendant(s)?

Answer   $    --1.00

(The amount may range from 0 to any sum up to but not more than $363,600.)

"10.   What punitive damages are to be awarded to Lane County from defendant Robert E. Wood?

Answer   $    --5000.00

(The amount may be any figure from 0 up to but not exceeding $100,000.)

"11.   What punitive damages are to be awarded Lane County from defendant Michael J. Safley?

Answer   $    --100,000.00"

After reading the verdict to counsel, the following colloquy took place out of the presence of the jury:

"THE COURT: The thought flashed into my mind that there must be some damages of some substance; isn't that the rule?

"[COUNSEL FOR SAFLEY]: Yes, Your Honor, I believe the law is that nominal damages will not support an award of punitive damages.

"[COUNSEL FOR WOOD]: That would be my position, too, Your Honor.

"[COUNSEL FOR SAFLEY]: That would be an invalid verdict for punitive damages.

"THE COURT: That's my understanding of it. Do you want some time to take a look at that, [counsel for plaintiff]?

"[COUNSEL FOR PLAINTIFF]: Yes, Your Honor.

"* * * * *

"[THE COURT:] Well, I'm reasonably certain that's the rule, but I can give you a little bit of time to take a look at it. If it is, I suppose what I must do is tell the jury that and send them back out."

After the recess, Lane County argued that the punitive award should stand or, alternatively, the case should be resubmitted to the jury with further instructions. Instead, the court received the verdict and discharged the jury.

On its own motion, the court then set a hearing on the verdict. After oral argument on defendants' motion to set

aside the verdict and to enter judgment for all defendants, the court issued a letter opinion and entered an order granting the motion. Judgment was entered by the court in favor of all defendants and costs were awarded against the plaintiff. Lane County appealed, asking the Court of Appeals to (1) reinstate the verdict, or (2) remand the case to the trial court to resubmit the issue of compensatory damages to the jury, or (3) remand for a new trial. The Court of Appeals affirmed the trial court without opinion.

Four assignments of error are raised in this appeal: (1) refusal of the trial court to instruct the jury on Lane County's "secret profits" theory of damages; (2) denial of Lane County's motions to amend its complaint; (3) setting aside the jury verdict and entering judgment for defendants; and (4) refusal to resubmit the case to the jury with further instructions. Because of our decision in this case, we address only the assignment of error pertaining to the sufficiency of the verdict.

In an effort to have the jury verdict reinstated, Lane County urges this court to adopt as a rule in Oregon the language appearing in our opinion in *Hall v. Cornett,* 193 Or 634, 240 P2d 231 (1952). *Hall* was a personal injury action resulting from an automobile collision. The jury awarded the plaintiff "One Dollar in General Damages" and special damages in the amount of $1,006.40. 193 Or at 636. This was held to be improper, as actual damage is the "gravamen of * * * an action for negligence" and "no right of the plaintiff is invaded * * * unless actual damage is done." 193 Or at 643. The verdict was set aside and a new trial granted. In making its decision, this court commented:

> "There are many cases of tort in which nominal damages may be allowed, as, for example, in actions for violation of the right of privacy (*Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438); breach of contract where no actual damages are suffered (*Rainier v. Masters,* supra, 79 Or 534, 154 P 426); defamation, malicious persecution *[sic],* interference with the right to vote, *breach of duty by a public officer,* trespass to land, and perhaps in other cases. Restatement, Torts, § 907, comment b. * * *." 193 Or at 644 (emphasis added).

The relevant portion of § 907 of the Restatement cited in *Hall* reads as follows:

"*No harm proved.* Nominal damages can be awarded when the defendant has invaded an interest of the plaintiff protected against non-harmful conduct of the sort committed by the defendant and no harm has been proved. In these cases harm is not requisite to a cause of action and nominal damages can be awarded, although there is proof that there has been and will be no substantial harm. This is true in actions of trespass to the person (see §§ 18, 21, 35), *a breach of duty by a public officer,* interference with a right to vote or to hold public office (see § 865) and trespass to land. (See § 163)." Restatement (Second) Torts § 907, *comment b* at 463 (1965) (emphasis added).

Section 908 of the Restatement makes further reference to public officials and states in pertinent part:

"In the earliest cases in which punitive damages were allowed, the plaintiff suffered no substantial harm, or at least no physical or financial harm. These were cases in which public officials were guilty of outrageously oppressive conduct." *Id.,* § 908, *comment c* at 465.

Plaintiff argues that since the jury found that Wood had breached his fiduciary duty to Lane County, our adoption of the language from the Restatement pertaining to "breach of duty by a public officer" would allow the county to recover the punitive damages award assessed against Wood on the verdict as returned without the need for an award of any actual damages.

The statement quoted from *Hall v. Cornett, supra,* was obviously *dictum,* and we have previously emphasized that the Restatement of Torts is not an authoritative statement of Oregon law. *Brewer v. Erwin,* 287 Or 435, 600 P2d 398 (1979). In *Brewer* we stated:

"* * * [Restatement] quotations should not be relied on in briefs as if they committed this court or lower courts to track every detail of the Restatement analysis in other cases. The Restatements themselves purport to be just that, 'restatements' of law found in other sources, although at times they candidly report that the law is in flux and offer a formula preferred on policy grounds." 287 Or at 455 n 12.

We have found no cases from any jurisdiction which involve a punitive damages claim arising from a breach of duty by a public official absent proof of actual harm. 2 Sedgwick, Damages § 547 (8th ed 1891), lists numerous cases where

nominal damages are recoverable against a public officer, but none involves punitive damages and is relevant to the case at bar. They involve a sheriff's omission to arrest a debtor on final process, or allowing a debtor to escape on such process, or failing to return an execution, and the like. None involves a breach of fiduciary duty remotely related to Wood's acts in this case.

McCormick on Damages sets forth additional sources from which to glean the meaning of the Restatement comments regarding public officials:

> "Historically, oppressive conduct by public officers was the situation where early judges were most prone to sanction exemplary damages, and by which they justified and rationalized the doctrine. Thus in the famous case of Huckle v. Money, [2 Wils 205, 95 Eng Reprint (Common Pleas, 1763)], where as a part of the struggle of King George the Third and his ministers to suppress John Wilkes' journal, 'The North Briton,' a general warrant, naming no person, was issued in an attempt to arrest the printer of the paper, and plaintiff was seized and imprisoned for six hours only, under this warrant, a jury allowed plaintiff large damages against the arresting officer. In passing on an application for a new trial, Lord Camden said: "* * * I think they have done right in giving exemplary damages; to enter a man's house by virtue of a nameless warrant, in order to procure evidence, is worse than the Spanish Inquisition; a law under which no Englishman would wish to live an hour.' This feeling finds its application to-day in the giving of punitive damages in cases of false imprisonment in the name of the law without lawful authority, whether against officers or, as is more usual to-day, against the private persons who instigated the arrest, and in cases of malicious prosecution and wrongful attachment sued out maliciously or oppressively." McCormick, Damages 288, § 81 (1935) (footnotes omitted).

It appears that the "breach of duty by a public official" condemned by § 907 of the Restatement, *supra*, involved intentional oppressive conduct by public officials directed against private citizens in violation of their individual liberties, or neglect of duties by sheriffs in collecting debts against persons or property. No such acts against private citizens are involved in this case. Nevertheless, the jury in this case, by its verdict, found Wood's and Safley's conduct sufficiently reprehensible to warrant imposition of punitive

damages even though it felt the county had suffered only nominal damages.

The jury found both Wood and Safley "liable for damages" to Lane County under interrogatories Nos. 1, 2 and 5, and assessed those damages at one dollar under interrogatory No. 9. The interrogatory as submitted by the court and to which no exception was taken provided that "[t]he amount may range from 0 to any sum up to but not more than $363,600." The jury was instructed on the issue of punitive damages as follows:

> "If the jury finds plaintiff entitled to compensatory or general damages, then you may consider the matter of punitive damages * * * to either defendant Wood or defendant Safley, the rules are the same. If either defendant is found liable for general damages, then the jury would consider the matter of punitive damages as to that defendant."

The jury followed that instruction. Under the state of this record, with no exception being taken to the verdict form, the verdict should stand on this basis alone. However, we believe the verdict allowing nominal damages and punitive damages should be upheld on a stronger legal foundation than the technical state of the verdict form. We believe the acts of Wood in breaching his fiduciary and statutory duties to the public and the acts of Safley in inducing Wood to breach those duties, resulting in nominal damages to Lane County, will support the awards of punitive damages in this case.

McCormick discusses the concept of allowing punitive damages in cases where only nominal damages are awarded:

> "* * * [I]t would seem desirable to require that judgment be rendered against any claimant upon any claim for money damages upon tort or breach of contract or otherwise unless he shall establish either that a judgment in his favor is necessary to prevent the acquisition of a property interest against him by prescription, or that he has sustained actual loss or injury for which he is entitled to substantial damages. *Possibly willful or malevolent invasions of person or property though unaccompanied by actual loss or damage might likewise be justifiable ground for nominal damages as a symbol of judicial disapproval and as a predicate for the imposition of costs and, where permitted, of exemplary damages.* * * *"
> McCormick, *supra* at 96 (emphasis added).

Sedgwick gives some additional insight to the question whether an award of nominal damages will support an award of punitive damages. After commenting, "[i]f the plaintiff has suffered no actual loss, he cannot maintain an action merely to recover exemplary damages," and that "[a] plaintiff has no right, the courts say, to maintain an action *merely* to inflict punishment," he states, "[i]f, however, a right of action exists, though the loss is nominal, exemplary damages may be recovered in a proper case; for the plaintiff had a right to maintain his action apart from the privilege of recovering exemplary damages." 1 Sedgwick, Damages 525, § 361 (8th ed 1891) (emphasis in original). Sedgwick then cites as an example the case of a malicious trespass on land where, although the actual damage is nominal, exemplary damages may be recovered. *Id.*, citing *Hefley v. Baker,* 19 Kan 9 (1877).

In this state we have recognized that certain intentional acts require no award of actual damages, due to special circumstances surrounding the misconduct, to support an award of punitive damages. These include conduct involving invasion of the right of privacy, *Hinish v. Meier and Frank Co.,* 166 Or 482, 113 P2d 438 (1941); wrongful attachment of property, *Crouter v. United Adjusters, Inc.,* 259 Or 348, 485 P2d 1208 (1971); and trespass, *Rhodes v. Harwood,* 273 Or 903, 544 P2d 147 (1975).

In this case the jury found that defendant Wood, a public official, was induced by entrepreneur Safley to profiteer in the sale and exchange of public lands. There is no question that the jury found the acts of Wood and Safley combined to constitute a breach of fiduciary duty to the citizens of Lane County. It may be that the property involved appreciated in value so that no actual loss was sustained by the county, but that fortuitous result does not diminish the severity of the wrongful acts. Indeed, after the real property exchange, oil might have been discovered on the property acquired by the county and the county may have reaped a great profit from the transaction, but that does not change the wrongful character of the acts of the public official in breaching his fiduciary duty to the public. The misconduct by Wood and Safley was intentional, not just careless. The scheme was premeditated, not reckless. The two defendants, motivated by greed, were found by the jury to have acted together knowingly to violate an official trust placed on Wood by the public.

■     The legal doctrine of punitive damages is founded on the theory that certain intentional acts should be punished or deterred. Punishment and deterrence concern behavior that society finds undesirable. Punishment and deterrence are not related to actual or compensatory damages. Punitive damages are not to compensate an injured party, but to give bad actors a legal spanking.

■     The jury in Clackamas County chose to punish the behavior of defendant Wood as a public officer for official misconduct. It also chose to punish the behavior of Safley for inducing Wood to breach his official duties. We believe that the acts, as found by the jury—of Wood as a public servant attempting to make a personal profit from the sale and exchange of public lands in breach of Wood's fiduciary duty to the citizens who elected him, and of Safley in intentionally inducing a public official to breach his fiduciary duties—are so egregiously culpable that an award of nominal damages is sufficient to support the awards of punitive damages against them.[1]

In this opinion we do not hold that every breach of fiduciary duty, nor every breach of a statutory duty, by a public officer justifies an award of nominal damages and, in turn, that every award of nominal damages or actual damages against such a public officer for such breaches of duty will justify an award of punitive damages. What we do say is that under the facts and issues of this case,[2] combined with the

---

[1] Defendants Wood and Safley argue that civil misconduct and criminal statutes presently serve the punishment and deterrent purposes attributed to the allowance of punitive damages. This court rejected that contention in *Roshak v. Leathers,* 277 Or 207, 560 P2d 275 (1977). *See also* Peters, *Punitive Damages in Oregon,* 18 Willamette L Rev 369, 413 (1982).

[2] Defendant Wood was charged with breaching his fiduciary duties in that prior to the exchange agreement of August 8, 1978, Wood had knowledge of and failed to disclose the following facts:

1. Phelps had a payment of approximately $675,000 due September 28, 1978, on the Willamette Christian Center property and had no funds with which to make the payment;

2. Phelps had received an offer from Bauku, Inc., to purchase the 30th Avenue property for $800,000 and Bauku, Inc., had the ability to fulfill its offer;

3. Wood stood personally to gain financially if Phelps and Safley received the 30th Avenue and County Farm Road properties in exchange for the Willamette Christian Center property;

4. Phelps, Safley and Wood were personal friends and in the past Phelps and

instructions of the trial judge,[3] the jury verdict was legally sufficient and should have been received by the trial court.

---

Safley had contributed to Wood's campaign for elective positions and had agreed to contribute to any future campaigns of Wood for an elective position;

5. Safley had a financial interest in the exchange of the properties and was engaged in a joint venture with Phelps;

6. The Willamette Christian Center property could be purchased and the 30th Avenue and County Farm Road properties could be sold on terms more beneficial to the county if the exchange agreement was not completed.

Lane County alleged that these facts were material and had they been disclosed Lane County would not have entered into the exchange agreement and that such failure to disclose was a breach of Wood's fiduciary duty.

In addition to this claim, Lane County charged Wood with breaching his statutory duties as follows:

1. Before August 8, 1978, defendants Wood, Safley and Phelps agreed that in exchange for gifts, promises of gifts, campaign contributions and future employment to Wood from Safley and Phelps, Wood would use his official position as commissioner and his confidential relationship with Lane county to arrange for an exchange of property between Phelps and Lane County whereby Safley and Phelps would profit;

2. This agreement was made knowing that Wood's vote, official action and judgment would be influenced and that he would personally gain through the use of confidential information regarding the offer of Bauku, Inc., which information was gained in the course and by reason of his official position, in violation of statutory provisions;

3. A conflict of interest was created which was not disclosed, in violation of the statutes.

[3] The court instructed the jury on breach of fiduciary duty as follows:

"Under Oregon Law, and as a County Commissioner, defendant Wood was in a fiduciary relationship with Lane County. A fiduciary is one who is in a position of trust and confidence with another, usually called a principal, while acting for and on behalf of the other. A fiduciary is legally bound in equity and good conscience to act in good faith and for the best interest of his principal. A fiduciary's loyalty must be to his principal. Any conduct which is intended to place a fiduciary's own interest or the interests of any other party ahead of the best interests of the principal is a breach of the fiduciary's duty."

The court instructed the jury on breach of statutory duty as follows:

"* * * Oregon's statutory law provides in substance and effect, first, that no public official shall use his official position or office to obtain financial gain for himself, other than official salary, honoraria or reimbursement of expenses; and, secondly, that no public official shall solicit nor receive, whether directly or indirectly, during any calendar year, any gift or gifts with an aggregate value in excess of $100 from any single source which could reasonably be known to have an administrative interest in a governmental agency in which the public official has an official position or over which such official exercises any authority; and, third, that no public official shall solicit nor receive, whether directly or indirectly, any pledge or promise of future employment, based upon any understanding that such public official's vote, official action or judgment would be influenced thereby; and, fourth, that no public official shall further his personal gain through the use of

The Court of Appeals is reversed and the case is remanded to the trial court to reinstate the jury verdict and enter judgment accordingly.

---

confidential information gained in the course of and by his official position or activities in any way.

"Oregon law also provides that when involved in a potential conflict of interest, an elected public official shall announce publicly the nature of the potential conflict prior to taking any official action thereon." *See* ORS 244.040, 244.120.