W. Scott **OGELSBY,** Plaintiff,

v.

**WESTERN STONE & METAL CORP.,**
a Colorado Corporation, Defendant.

No. CIV.99–492–BR.

United States District Court,
D. Oregon.

May 30, 2001.

Tim A. Quenelle, Timothy C. Bennett, Moore & Associates, P.C., Lake Oswego, for Plaintiff.

Sharon L. Toncray, Miller Nash LLP, Portland, James R. Dickens, Miller Nash LLP, Seattle, WA, Brent T. Johnson, Fairfield & Woods, P.C., Denver, CO, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Plaintiff's Motion for Entry of Judgment (# 107), Defendant's Motion for Judgment as a Matter of Law Regarding Punitive Damages and Alternative Motion for New Trial (# 113), and Plaintiff's Amended Motion for Entry of Judgment as to the State of Oregon (# 116).

Plaintiff brought this diversity action against Defendant for termination of Plaintiff's employment in retaliation for his good-faith cooperation with a law-enforcement investigation of Defendant's alleged sale of used and damaged jewelry to its customers as new. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

Before trial, the Court dismissed Plaintiff's claim for breach of a contractual covenant of good faith and fair dealing, and Plaintiff withdrew his wrongful discharge claim. At the jury trial, Plaintiff prevailed on his claim for Whistleblower Retaliation under Or.Rev.Stat. § 659.550. After the jury awarded Plaintiff economic damages of $30,000 and non-economic damages of $93,750, it deliberated further and awarded punitive damages of $250,000.

For the reasons that follow, Plaintiff's Motion for Entry of Judgment as modified is GRANTED. Defendant's Motion for Judgment as a Matter of Law Regarding Punitive Damages and Alternative Motion for New Trial is DENIED. Plaintiff's Amended Motion for Entry of Judgment as to the State of Oregon is GRANTED.

## PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

Plaintiff originally sought entry of judgment on the jury verdict in the following amounts: $30,000 in economic damages, $93,750 in non-economic damages, and $250,000 in punitive damages. Defendant agreed judgment should be entered for the compensatory damages awarded by the jury. Defendant, however, objected to an award of punitive damages. In its Order issued April 18, 2001, therefore, the Court directed Plaintiff to prepare a modified form of judgment as to the compensatory damages awarded by the jury. Plaintiff and Defendant were unable to agree, however, and each submitted a different form of proposed judgment.

The parties disagree about whether the judgment should address post-judgment interest, which accrues pursuant to 28 U.S.C. § 1961(a) from the date a final judgment awarding damages is entered even if the judgment does not expressly refer to post-judgment interest. *Tinsley v. Sea–Land Corp.,* 979 F.2d 1382, 1384 (9th Cir.1992), *cert. denied,* 510 U.S. 817, 114 S.Ct. 69, 126 L.Ed.2d 38 (1993). *See also Dunn v. HOVIC,* 13 F.3d 58, 62 (3d Cir.) (quoting with approval from and following *Tinsley,* 979 F.2d at 1384), *cert.*

*denied,* 510 U.S. 1031, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993).

The parties also disagree about whether the final judgment awarding compensatory damages should reflect Plaintiff is entitled to an award of attorneys' fees and costs. The parties further disagree regarding whether the judgment should provide for post-judgment interest on any future award of attorneys' fees and costs relating back to the date judgment is entered as to compensatory damages.

The Oregon statute under which Plaintiff recovered at trial, Or.Rev.Stat. § 659.550, incorporates Or.Rev.Stat. § 659.121(2), which provides "the court *may* allow the prevailing party costs and reasonable attorney fees at trial" (emphasis added). At present, however, Plaintiff has not applied for, nor has the Court determined that Plaintiff is entitled to an award of attorneys' fees and costs. This issue will be resolved after entry of judgment pursuant to Fed.R.Civ.P. 54(d). Accordingly, the judgment awarding compensatory damages to Plaintiff will not include an award of attorneys' fees and costs.

■ Plaintiff may, however, file a timely petition for award of attorneys' fees and costs. Post-judgment interest under the federal statute runs from the date of a judgment awarding attorneys' fees and costs rather than the date the amount of such fees and costs is quantified. *Friend v. Kolodzieczak,* 72 F.3d 1386, 1391–92 (9th Cir.1995), *cert. denied,* 516 U.S. 1146, 116 S.Ct. 1016, 134 L.Ed.2d 96 (1996) (citations omitted). If awarded, therefore, post-judgment interest will run from the date of the supplemental judgment establishing Plaintiff's right to such an award. *Friend,* 72 F.3d at 1391–92 (citing *Finkelstein v. Bergna,* 804 F.Supp. 1235, 1239–40 (N.D.Cal.1992)). *Cf. Perkins v. Standard Oil Co.,* 487 F.2d 672, 674–76 (9th Cir. 1973) (post-judgment interest runs from the date attorneys' fees are first awarded

even though the fee award is later reduced on appeal).

■ The parties also disagree as to whether Plaintiff's pretrial withdrawal of his common law wrongful discharge claim should be addressed in the judgment. Plaintiff cites *Maduff Mortgage Corp. v. Deloitte Haskins & Sells* for the proposition that claims withdrawn before trial need not be included within the final judgment under Oregon law. 83 Or.App. 15, 20, 730 P.2d 558 (1986), *rev. denied,* 303 Or. 74, 734 P.2d 354 (1987). In fact, *Maduff* stands for the opposite principle. The Court of Appeals of Oregon rejected the appellant's argument that a claim withdrawn in open court need not be disposed of by a judgment. 83 Or.App. at 20, 730 P.2d 558. The Court held, "[w]e disapprove the suggestion ... that a claim is disposed of if it is withdrawn in open court and reaffirm ... that all claims must be disposed of by judgment." *Id.* Plaintiff's common law wrongful discharge claim must, therefore, be addressed in the judgment.

Finally, the parties agree a reference to the Court's order granting partial summary judgment and dismissing one of Plaintiff's claims must be included in the judgment. A judgment awarding compensatory damages to Plaintiff consistent with the above authorities and considerations now is in order.

### DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING PUNITIVE DAMAGES

At trial, with the parties' agreement, the Court deferred Plaintiff's claim for punitive damages until after the jury returned its verdict on Plaintiff's claim for compensatory damages. Both Plaintiff and Defendant agreed in advance that if Plaintiff's claim for punitive damages were ultimately submitted to the jury, no addi-

tional evidence would be allowed on that question except for evidence of Defendant's financial worth.

After the jury returned a verdict in Plaintiff's favor on his statutory Whistle-blower–Retaliation claim, Defendant moved for judgment as a matter of law to bar any consideration of punitive damages by the jury. The Court heard argument, denied Defendant's Motion, and submitted Plaintiff's claim for punitive damages to the jury. Before the jury began deliberating on Plaintiff's punitive damages claim, evidence of Defendant's financial worth was provided to the jury. The Court instructed the jury regarding punitive damages, and counsel for Plaintiff and Defendant were permitted to make additional closing arguments to the jury concerning punitive damages. Pursuant to Fed. R.Civ.P. 50(b), Defendant now renews its Motion for Judgment as a Matter of Law and requests the Court to set aside the jury's punitive damages award.

Plaintiff based his claim for punitive damages on his contention that Defendant acted with malice, foregoing any contention that Defendant acted in reckless disregard of Plaintiff's rights. The Court instructed the jury that Plaintiff could recover punitive damages if he showed by clear and convincing evidence that Defendant acted with malice by terminating Plaintiff's employment as a result of Plaintiff's complaints to the Oregon Attorney General's Office. Defendant did not object to the Court's instructions to the jury regarding punitive damages and does not contend the Court erred when it instructed the jury. Instead, Defendant maintains Plaintiff has not offered clear and convincing evidence that Defendant acted with malice, the standard of proof required for an award of punitive damages.

## A. Sufficiency of Evidence that Defendant Acted With Malice

■ Defendant points out the Court must review the jury's punitive damages award to determine whether it "is within the range of damages that a rational juror would be entitled to award based on the record as a whole, viewing the statutory and common-law factors that allow an award of punitive damages for the specific type of claim at issue in the proceeding." Or.Rev.Stat. § 18.537(2). *See also Parrott v. Carr Chevrolet, Inc.*, 331 Or. 537, 541–42, 17 P.3d 473 (2001) (the court recognized the rational juror inquiry is the standard for post-verdict judicial review of punitive damages in Oregon). Defendant contends the Oregon Supreme Court recently affirmed the clear and convincing evidence standard of proof for awarding punitive damages as an important safeguard to unfair jury verdicts. *See Parrott*, 331 Or. at 560, 17 P.3d 473. Defendant argues the Court's careful and considerate evaluation of whether a rational juror could have concluded there was clear and convincing evidence of malice, therefore, is a major safeguard under Oregon law to an arbitrary punitive damages award.

Defendant asserts Plaintiff presented no evidence at trial that showed Defendant engaged in trickery or deceit, took part in a pattern of retaliation that targeted persons other than Plaintiff, or was motivated by malice. Defendant contends Plaintiff's only evidence regarding malice pertained to the timing of his discharge and concerned Defendant's retention of a security guard to escort Plaintiff from Defendant's premises after Plaintiff was discharged. Defendant concedes, for the purpose of its Motion only, that Plaintiff may have provided sufficient evidence for the jury to find retaliation on the underlying claim, but Defendant maintains Plaintiff has not

proved malice by clear and convincing evidence.

 Judgment as a matter of law is proper if the evidence "construed in the light most favorable to the nonmoving party, permits only one conclusion, and that conclusion is contrary to the jury's." *Scott v. Ross*, 140 F.3d 1275, 1281 (9th Cir.), *reh'g denied*, 151 F.3d 1247 (9th Cir.1998), *cert. denied*, 526 U.S. 1033, 119 S.Ct. 1285, 143 L.Ed.2d 378 (1999) (citing *Acosta v. City & County of San Francisco*, 83 F.3d 1143, 1145 (9th Cir.), *cert. denied*, 519 U.S. 1009, 117 S.Ct. 514, 136 L.Ed.2d 403 (1996)). The Court concludes, viewed in the light most favorable to Plaintiff as the nonmoving party, there was sufficient evidence presented at trial for a rational juror to find the evidence was clear and convincing that Defendant acted with malice in discharging Plaintiff.

For instance, the evidence showed Plaintiff was a skilled, reliable jeweler employed by Defendant at its Tigard, Oregon, store for twelve years. Plaintiff stated his concerns about the quality of the jewelry he worked on, which was consistent with Defendant's written policy statements that encouraged employees to express employment-related concerns. Throughout his employment, Plaintiff complained about the poor quality of certain "stock box" jewelry. Although Defendant repeatedly documented what it perceived as an unacceptable attitude by Plaintiff during the years of his employment, including Plaintiff's criticisms of the "stock box" work, Defendant, nevertheless, gave Plaintiff pay raises based upon his yearly performance evaluations and did not terminate Plaintiff until March 27, 1998.

Additionally, the evidence shows on Monday of the week Plaintiff was terminated, the store manager met with Plaintiff concerning his interest in a jeweler position at Plaintiff's Phoenix, Arizona, store. Plaintiff's store manager stated Defendant would pay Plaintiff $3.00 per hour less than he was currently paid if he transferred to the lateral jeweler position in Defendant's Phoenix store. Plaintiff was visibly upset by the information; nevertheless, the store manager did not immediately recommend to Defendant's Human Resources Department that Plaintiff should be terminated. The next day the store manager reported the incident to Defendant's regional manager and stated Plaintiff was angry and making threats after meeting with the store manager. No jeweler who worked in the enclosed, confined jewelry shop area of Defendant's store, however, confirmed they saw or heard Plaintiff make threats following his meeting with the store manager.

Plaintiff later reported to the Oregon Attorney General's Office, which already was investigating Defendant's business practices due to an earlier complaint by Plaintiff, that Defendant was shredding documents in its Tigard Store. The Oregon Attorney General's Office then wrote to Defendant's Colorado attorney and directed Defendant to stop shredding documents that might be relevant to the state's inquiry into Defendant's business practices. On Wednesday, Defendant's regional manager told the store manager to stop shredding all documents at the Tigard store. That same day, Defendant's store manager sent documents by facsimile to Defendant's home office in Colorado that explained the Tigard store's purchase of the shredder and summarized the store manager's account of her Monday meeting with Plaintiff. The store manager's memorandum describing her meeting with Plaintiff was not shown to Plaintiff, and he was not provided an opportunity to explain his version of events or to sign the memorandum as provided by Defendant's policies.

On the next day, Thursday, following a conversation with Defendant's regional manager, Defendant's store manager interviewed employees at the Tigard store and took written statements from them about Plaintiff. The written statements included information that suggested Plaintiff was the individual who complained to the Oregon Attorney General's Office about Defendant's business practices and instigated the official investigation. On Friday, Defendant's store manager sent the written statements to Defendant's Colorado headquarters. After reviewing the statements, Defendant's chief executive officer concluded Plaintiff was the source of one or more complaints to government officials. Defendant's decision to discharge Plaintiff was made late in the day on Friday after consulting Defendant's chief executive officer. Plaintiff was terminated on Saturday morning, escorted out of Defendant's store by an armed and uniformed security guard, prohibited from saying "good-bye" to fellow employees, and told never to re-enter Defendant's premises.

Defendant's investigation was conducted hurriedly without Plaintiff's knowledge and without providing Plaintiff the opportunity to respond. Also, it was unprecedented for Defendant's store manager to take written statements from employees about another employee and to fail to provide Plaintiff with an opportunity to respond pursuant to Defendant's policy. Furthermore, Plaintiff was escorted out of the building by an armed and uniformed guard in full view of Defendant's other employees and prohibited from saying farewell to them. Plaintiff testified he had never witnessed Defendant terminate an employee in that manner in the twelve years of his employment.

Based upon the evidence at trial, when viewed in Plaintiff's favor, the jury reasonably could have concluded under a clear and convincing evidence standard of proof that Defendant harbored a malicious intent toward Plaintiff demonstrated by the manner in which he was terminated. A jury also reasonably could have found Defendant would have discharged Plaintiff long before Defendant's chief executive officer became aware that Plaintiff had instigated an investigation of Defendant's business practices if, in fact, Plaintiff's persistent "unacceptable attitude" had been a significant problem. In addition, Defendant's act of gathering written statements about Plaintiff from other employees without providing Plaintiff an opportunity to respond and/or Defendant's use of an armed and uniformed security guard to escort Plaintiff from Defendant's building in a publicly humiliating manner are facts from which rational jurors could have found by clear and convincing evidence that Defendant acted with malicious intent.

### B. Factors Concerning the Court's Review for Excessiveness

Plaintiff argues the factors set out in Or.Rev.Stat. § 18.537(2) support the propriety of the jury's award for punitive damages in this action. Defendant does not contend the jury's punitive damages award was unconstitutionally excessive; nevertheless, the Court will review the award, as required by Oregon law, in light of the relevant factors pursuant to Or.Rev. Stat. § 18.537(2). In *Parrott*, the Oregon Supreme Court summarized the rational juror inquiry standard for post-verdict judicial review of punitive damages awards as follows:

A jury's punitive damages award is not 'grossly excessive' —and, therefore, will not be disturbed on review—if it is within the range that a rational juror would be entitled to award in light of the record as a whole. Combining the factors announced by the [United States] Supreme Court in [*BMW of North America, Inc. v. Gore*] with those announced

by this court in [*Oberg v. Honda Motor Co.*], the range that a rational juror would be entitled to award depends on the following: (1) the statutory and common-law factors that allow an award of punitive damages for the specific kind of claim at issue ...; (2) the state interests that a punitive damages award is designed to serve ...; (3) the degree of reprehensibility of the defendant's conduct ...; (4) the disparity between the punitive damages award and the actual or potential harm inflicted ...; and (5) the civil and criminal sanctions provided for comparable misconduct."

331 Or. at 555, 17 P.3d 473 (citations omitted).

### 1. *Statutory and Common-law Factors Allowing A Punitive Damages Award for Whistleblower Retaliation*

■ Under Oregon law, punitive damages are awarded on the theory that certain intentional conduct should be punished or deterred. *Lane County v. Wood,* 298 Or. 191, 203, 691 P.2d 473 (1984). Punishment and deterrence "are not related to actual or compensatory damages" but "concern behavior that society finds undesirable." *Id.* To impose punitive damages, Oregon statutory law requires proof "by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice." *See* Or. Rev.Stat. § 18.537(1). Additionally, Or. Rev.Stat. § 659.121(2) specifically authorizes recovery of punitive damages by a party claiming to be aggrieved by violations of Oregon's Whistleblower–Retaliation Act as codified in Or.Rev.Stat. § 659.550. *See Jensen v. Medley,* 170 Or. App. 42, 56, 11 P.3d 678 (2000) (the court recognized Oregon statutory law "specifically permits recovery of punitive damages for violation of the 'whistleblower' law.").

As noted, the Court instructed the jury it could award punitive damages if it found by clear and convincing evidence that Defendant acted with malice when it terminated Plaintiff's employment as a result of Plaintiff's complaints to the Oregon Attorney General's Office. Furthermore, the jury asked the Court during the course of deliberations to define the meaning of "malice." Upon Defendant's recommendation and the stipulation of the parties, the Court read to the jury an agreed definition of "malice" from Ninth Circuit Model Civil Jury Instruction No. 7.5 (Punitive Damages). Accordingly, the jury was instructed "malice" is conduct "accompanied by ill will, or spite, or if it is for the purpose of injuring another." The jury then completed its deliberations and awarded $250,000 in punitive damages to Plaintiff.

In sum, the Court concludes there was sufficient evidence presented at trial on which a rational juror could have concluded under a clear and convincing evidence standard of proof that Defendant acted with malice when it discharged Plaintiff. Statutory and common-law factors that allow for awards of punitive damages under Oregon law, therefore, support the propriety of the jury's award of punitive damages to Plaintiff.

### 2. *State Interests Served By Awards of Punitive Damages*

■ The Court of Appeals of Oregon reasoned "[t]he statutory protection provided by the whistleblower statute advances the public policy of encouraging citizens to assist in the enforcement of state and federal laws." *Jensen,* 170 Or. App. at 57, 11 P.3d 678. The Whistleblower–Retaliation statute makes it an unlawful employment practice to retaliate against an employee for good-faith reporting of suspected criminal activity. Or.Rev.Stat. § 659.550(1). The state interest served by a punitive damages award under the Whistleblower–Retaliation statute is to encour-

age citizens to assist in the enforcement of state and federal laws. Also, an award of punitive damages under the statute advances the goal of law enforcement by protecting employees from retaliatory discharge for reporting suspected violations of law. Accordingly, the jury's award of punitive damages in this action advances Oregon's interests in a manner intended under the state's whistleblower law.

### 3. Degree of Reprehensibility of Defendant's Conduct

Retaliation against an employee for reporting to authorities in good faith a suspected violation of law is sufficiently reprehensible to warrant an imposition of punitive damages when the requirements of Or.Rev.Stat. 18.537(1) are satisfied and deceit is involved. *See Jensen,* 170 Or. App. at 58, 11 P.3d 678. In matters involving only infliction of economic injury, a substantial penalty is justified when the defendant inflicts the injury through affirmative acts of misconduct. *Parrott,* 331 Or. at 562, 17 P.3d 473 (citing and quoting *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 579, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). Here the jury found Defendant's intentional retaliatory behavior caused Plaintiff to suffer emotional distress as well as economic injury.

Based on the evidence, a rational juror could have found Defendant engaged in affirmative acts of misconduct of a reprehensible nature. For instance, the jury could reasonably have concluded Defendant engaged in misconduct when it conducted a pretextual investigation of Plaintiff that was without precedent and in violation of company policy by requesting written statements about Plaintiff from other employees without providing notice to Plaintiff and without providing Plaintiff the opportunity to respond. The jury reasonably could have determined Defendant used an armed and uniformed security guard to termi-

nate Plaintiff on pretextual grounds that he was a security risk in order to humiliate him publicly. The Court, therefore, concludes there was an evidentiary basis for a rational juror to find Defendant's conduct was sufficiently reprehensible to merit an award of punitive damages.

### 4. Disparity Between Punitive Damages and Actual Harm

This factor concerns whether there is a reasonable relationship between the punitive damages awarded and the actual harm as well as between the punitive damages awarded and the potential harm. *Parrott,* 331 Or. 537, 561, 17 P.3d 473 (citing and quoting *BMW v. Gore,* 517 U.S. at 581, 116 S.Ct. 1589). No simple mathematical formula controls the Court's review of the ratio of punitive damages to actual and/or potential harm. *Id.* at 489.

In this action, the ratio between punitive and compensatory damages is roughly 2 to 1; i.e., the jury determined Plaintiff suffered economic and non-economic damages that totaled $123,750 and awarded punitive damages of $250,000. In light of the factors discussed above, the Court concludes the disparity between the punitive damages awarded and the actual and/or potential harm inflicted is sufficiently moderate to survive judicial review.

### 5. Comparison of Punitive Damages Awarded to Civil or Criminal Penalties for Comparable Conduct

This factor involves comparison of the jury's punitive damages award with the civil or criminal penalties that could be imposed for comparable misconduct. *Parrott,* 331 Or. at 563, 17 P.3d 473. Penalties for comparable misconduct are relevant to whether Defendant was on notice of the severity of the penalty that might be im-

posed. *Id.* (citing *Gore,* 517 U.S. at 574, 116 S.Ct. 1589).

Violation of Or.Rev.Stat. § 659.550 may give rise to a civil action for recovery of the greater of claimant's actual compensatory damages or statutory damages of $200 and punitive damages. *See* Or.Rev. Stat. §§ 659.550(2), 659.121(2). Violation of Or.Rev.Stat. § 659.550 also subjects the violator to civil and criminal penalties as provided in Or.Rev.Stat. §§ 659.010–659.110. A conviction for violating Or.Rev. Stat. § 659.110 is punishable by a fine of up to $500 and imprisonment in the county jail for up to one year. Or.Rev.Stat. § 659.990(1).

The above statutory scheme, which includes civil penalties, punitive damages, criminal fines, and incarceration, provided Defendant with sufficient notice that its violation of Oregon's Whistleblower–Retaliation Act potentially would have significant deleterious economic consequences. *See Parrott,* 331 Or. at 564, 17 P.3d 473 (a regulatory scheme of sanctions that includes interruption or closure of business operations provides sufficient notice to a business defendant that its violation of the law could have serious economic consequences).

The Court agrees with Plaintiff's argument that the civil penalty and punitive-damages provisions of Oregon's whistleblower statute put Defendant on notice of the public policy that supports good-faith reportage of suspected criminal conduct. Defendant was also on notice of the magnitude of the sanction a jury might impose in a civil action. The Court finds, therefore, the relevant potential civil and criminal sanctions of this statutory scheme are significant enough to justify the jury's punitive damages award of $250,000.

Accordingly, after considering the above factors summarized in *Parrott,* the Court concludes the amount of punitive damages awarded against Defendant is within the range a rational juror could award based on the record as a whole, and the jury's punitive-damages award is supported by the evidence and pertinent law. Defendant's Motion for Judgment as a Matter of Law Regarding Punitive Damages, therefore, is denied.

## DEFENDANT'S ALTERNATIVE MOTION FOR NEW TRIAL ON PUNITIVE DAMAGES

Pursuant to Fed.R.Civ.P. 50(c) and 59, Defendant asks the Court to order a new trial on the issue of punitive damages. Defendant contends the clear weight of the evidence is contrary to the jury's punitive-damages verdict. In support of its Motion, Defendant asserts the punitive-damages award could only have been based upon (1) the jury's reaction to Plaintiff's improper testimony that Defendant illegally sold used jewelry as new, and (2) the improper argument of Plaintiff's counsel that Defendant was engaged in covering up illegal activity. Also, Defendant contends any evidence that it acted with malice did not satisfy the clear and convincing standard of proof required for an award of punitive damages.

The trial court may grant a new trial "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 510 n. 15 (9th Cir.2000) (citing *Ace v. Aetna Life Ins. Co.,* 139 F.3d 1241, 1248 (9th Cir.), *cert. denied,* 525 U.S. 930, 119 S.Ct. 338, 142 L.Ed.2d 279 (1998)). Whether to grant a new trial falls within the trial court's discretion, but " 'a stringent standard applies when the motion is based on insufficiency of the evidence.' " *Equal Employment Opportunity Comm. (EEOC) v. Pape Lift, Inc.,* 115

F.3d 676, 680 (9th Cir.1997) (citation omitted).

Even when there is sufficient evidence to support the jury verdict, the court may grant a new trial if "the verdict is against the 'great weight' of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'" *Venegas v. Wagner,* 831 F.2d 1514, 1519 (9th Cir.1987) (citation omitted). In exercising its discretion, the court may weigh the evidence and assess the credibility of witnesses and "need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir.1987) (citations omitted). If the court " 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed,'" a new trial may be granted. *Id.* (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806 at 48–49 (1973)).

Prior to trial, Plaintiff filed a Motion in Limine in which he sought to preclude all mention or evidence of the outcome of the investigation of Defendant's business practices by the Oregon Attorney General's Office. When the time came for argument on Plaintiff's Motion in Limine during the Pretrial Conference, Defendant's counsel stated Defendant did not intend to offer evidence of the outcome of the official investigation. Accordingly, the Court granted Plaintiff's Motion to exclude such evidence in an effort to avoid litigating the collateral issue of whether Defendant's business practices were lawful. Whether the report of suspected criminal activity may later prove to have been true is not relevant to the issue of whether an employee had reasonable cause to report a suspected violation at the time the report was made. *Jensen,* 170 Or.App. at 54, 11 P.3d 678.

Defendant also agreed before trial not to challenge whether Plaintiff satisfied the "good faith" requirement of Or.Rev.Stat. § 659.550(1) when he made reports to government authorities. On the basis of Defendant's stipulation as to Plaintiff's "good faith," certain evidence was excluded that Plaintiff intended to offer to establish he had reasonable cause to report the suspected violation of law.

In support of its Motion for New Trial, Defendant contends Plaintiff failed to comply with these evidentiary restrictions. Defendant maintains Plaintiff improperly testified at trial that Defendant's business practices were illegal and criminal. For instance, Defendant points to Plaintiff's testimony in response to a question from his counsel regarding whether Plaintiff ever complained about having to work on certain "stock box" items. Plaintiff testified he prepared merchandise from the "stock box" to "be resold" as part of his job. He also said "in the very beginning" he complained to his manager and "[t]old him that I believed it to be illegal, that I thought it was a criminal thing for them to be reselling used jewelry as new."

Additionally, Plaintiff was asked by his counsel to explain how the quality of the work Plaintiff performed related to Plaintiff's complaints and negative attitude at work. Plaintiff testified the work he performed on merchandise from the "stock box" affected the pride he took in his job because "you're basically taking a reconstructed piece and giving the impression that it's a new piece and selling it to a customer when somebody else has already owned it and its been worn and pieces are replaced." Plaintiff also testified he complained to his manager because "anytime you have to reconstruct a piece, it's real hard to get it to look like a brand-new piece."

Plaintiff further testified the "stock box" merchandise began showing more flagrant signs of "being worn out" after a new

manager arrived at the Tigard store, and Plaintiff complained about it. In response to questioning by his lawyer about improvements in Plaintiff's attitude observed by his immediate supervisor in 1998, Plaintiff stated his attitude showed improvement then "because I had done what I deemed to be the correct thing and filed a complaint with the Attorney General's office." He testified, nevertheless, he occasionally continued to complain about the merchandise "[i]f I got a stock job on my desk that was extremely worn out or—or that I felt like was a flagrant miss—misrepresentation of a product."

Plaintiff's above testimony was relevant and admissible on the issue of Defendant's justification for discharging Plaintiff. In its defense, Defendant asserted it was justified in terminating Plaintiff's employment because of Plaintiff's persistently bad attitude and his incessant complaining. Plaintiff's descriptions of why he was making complaints on the job and why he labored with a bad attitude were admissible because Defendant pursued the defense that one of its reasons for discharging Plaintiff was his twelve-year history of exhibiting an unacceptable attitude.

 In its Reply brief in support of its Motion, Defendant complained about other parts of Plaintiff's testimony for the first time. For example, Plaintiff testified when he drove home immediately following his termination, he wondered how he was "going to tell my family that I had lost my income for doing what I deemed to be the right thing." Plaintiff then continued by stating, "I was following the law . . . [a]nd I was being treated and turned into what I felt was a criminal." Further, when asked by his counsel about his feelings on being discharged, Plaintiff stated:

I feel like I—I'm depressed. I feel like I've lost a lot of time that I put into a company job. I feel like I was forced to take part in something I knew was

wrong for 12 years. I fought this company to try to get them to change their work habits, to stay within guidelines as given to us by the State. And I don't know how to—you could estimate emotional stress.

Such testimony by Plaintiff, nevertheless, was relevant and admissible regarding Plaintiff's claim for humiliation and emotional distress damages.

 Plaintiff was also questioned by his counsel regarding a written evaluation of his job performance in 1994 in which Defendant noted Plaintiff " 'has made substantial improvement regarding his negative attitude.' " When questioned about the improvement in his attitude, Plaintiff said, "I basically quit telling the new salespeople about the resale and reconstruction of the used product." In response to a follow-up question by his counsel about why he had been telling salespeople such information, Plaintiff testified, "Well, I felt like they needed to know that they were taking part in what I—what was—is an illegal act and—." Defendant's counsel then objected and asked that such testimony be stricken. The Court sustained Defendant's objection.

The Court then immediately instructed the jury as follows:

Jurors, this trial is not about forming a judgment from your perspective as to whether or not this practice is acceptable. The only reason you're hearing evidence about it is that it forms the basis of the plaintiff's complaint in which he contends he was terminated for doing something he was legally privileged to do, complaining to an agency about a practice he wanted investigated.

We're not going to draw any judgments about that practice here, and it's not going to be allowed to call it criminal except to the extent that that opinion may bear upon this witness's state of

mind. But don't you draw any conclusions about whether the practice is permitted or not. That's just not an issue we're going to deal with in this trial.

When a district court orders testimony stricken and provides a cautionary instruction to the jury, there is a strong presumption the jury has followed the court's instruction. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir.2000) (citing *United States v. Pavon*, 561 F.2d 799, 803 (9th Cir.1977)). On at least two occasions, the Court instructed the jury that the merit of Plaintiff's report to government officials was not an issue in the case. Plaintiff's testimony that Defendant engaged in "an illegal act," therefore, does not support Defendant's request for a new trial because "[o]rdinarily, cautionary instructions or other prompt and effective actions by the trial court are sufficient to cure the effects of improper comments." *United States v. Nelson*, 137 F.3d 1094, 1106 (9th Cir.), *cert. denied*, 525 U.S. 901 (1998).

Defendant also asserts Plaintiff's counsel engaged in misconduct in his closing argument. Defendant contends Plaintiff's counsel improperly referred to Defendant's possible concern about the potential adverse financial effect of Plaintiff's report to government officials and improperly insinuated Defendant shredded documents to cover up its allegedly wrongful conduct. Defendant also maintains Plaintiff's counsel improperly argued that Defendant's motive in firing Plaintiff was to set an example to other employees who might consider making a report of suspected criminal activity in the future.

Defendant argues the following statements by Plaintiff's counsel were improper and justify granting a new trial:

(1) Shane Company heavily advertises. They—the jewelry industry, in general, is totally based on marketing. It's based on image. And what effect would this have on their business if it comes out that they're shredding documents responsive to an official investigation? An investigation that pertains to whether they sell used jewelry as new. So you have to use commonsense determination as to, hey, you think this company was worried about this letter from the Department of Justice that said "Immediately stop all shredding"?

(2) And you're not going to let some employee of yours create legal liability for you with the Department of Justice. You're going to get rid of them.

(3) And Mr. Oglesby was bothered by the fact that they had taken these pieces of merchandise that are poor quality and for profit turn it around and put it out as new.

(4) I think common sense—commonsense conclusion to draw on this is if you're working with a coworker that says, "We're doing something improper. We're doing something illegal."

(5) He got terminated on the spur of the moment, without any warning. He got treated like a criminal.

Plaintiff contends Defendant waived its right to object to any improper statements made in the closing argument of Plaintiff's counsel because Defendant did not object at trial. Defendant acknowledges it did not object to the alleged improper statements made in closing arguments by Plaintiff's counsel. Defendant asserts, however, objections during closing arguments are not required when the court has made pertinent *in limine* rulings before trial regarding the admissibility of evidence.

In support of its argument, Defendant relies upon *Anheuser–Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 345–47 (9th Cir.1995). In *Anheuser*, the appellant's attorney "repeatedly and impermissibly elicited testimony and made reference to matters previously ruled in-

admissible with the sole purpose of bringing to the jury something it should not have heard." *Id.* at 347 (citation and internal quotations omitted). The Court of Appeals found the evidence presented in violation of the trial court's *in limine* ruling was unfairly prejudicial to the appellee and the appellee had not presented rebuttal evidence due to the *in limine* ruling. *Id.* Furthermore, the appellate court concluded the appellant's attorney used the inadmissible evidence in an inflammatory manner in his closing argument. The Ninth Circuit, therefore, affirmed the trial court's order granting the appellee a new trial on the appellant's counterclaim. *Id.* In *Anheuser,* however, the Court of Appeals noted the improper testimony was elicited and impermissible comments were made "over [appellee's] repeated objections" even after such objections were "made and sustained." *Id.* at 346.

In this action, Defendant did not object at any time to the allegedly improper statements made by Plaintiff's counsel during his closing argument nor did Defendant move for a mistrial at the conclusion of the closing argument by Plaintiff's counsel. The Court concludes, moreover, Plaintiff's counsel did not refer to inadmissible evidence in an inflammatory manner during his closing argument.

Significantly, Defendant complains about statements made by Plaintiff's counsel that concern Defendant's liability on Plaintiff's underlying claim for Whistleblower–Retaliation. No such remarks were made by Plaintiff's counsel during his closing argument regarding Plaintiff's punitive damages claim.

 A new trial is warranted on the ground of attorney misconduct during trial when the flavor of misconduct sufficiently permeates an entire proceeding to establish that the jury was influenced by passion and prejudice in reaching its verdict.

*Kehr v. Smith Barney, Harris Upham & Co., Inc.,* 736 F.2d 1283 (9th Cir.1984) (citation omitted). The Court finds the isolated comments by Plaintiff's counsel did not permeate the proceeding or inflame and unfairly prejudice the jury in a manner sufficient to warrant a new trial. Indeed, the Court concludes the award of punitive damages against Defendant was not excessive. *See Cooper v. Firestone Tire and Rubber Co.,* 945 F.2d 1103, 1108 (9th Cir.1991) (whether the award of damages is excessive is a factor the court may consider in determining when an attorney's misconduct so permeated the trial that the jury was influenced by passion and prejudice in reaching its verdict).

 Defendant further argues Ms. Harris, Defendant's store manager, was a highly credible witness. She testified Plaintiff became upset following the interview regarding the job opening in Defendant's Phoenix store, and Plaintiff allegedly stated Defendant would be "very, very sorry" about its treatment of Plaintiff. Harris testified she feared for her own safety as a result of Plaintiff's comments during and following the interview, and that she considered Plaintiff's comments constituted a threat against Defendant and Defendant's other employees. Defendant contends such testimony constitutes unrefuted evidence that Plaintiff threatened to commit violence in the workplace and establishes he was justifiably terminated for that reason. The jury, however, was free not to accept Harris's testimony. Moreover, although Plaintiff acknowledges he became upset during the interview with Harris, he disputes making any threats of violence at any time against Harris, Defendant, or Defendant's other employees.

Considering all of the evidence and assessing the credibility of witnesses who testified at trial, the Court does not have a definite and firm conviction that the jury

committed a mistake in awarding the punitive damages to Plaintiff. Even taking Harris's testimony at face value with respect to the issue of Plaintiff's alleged threat does not establish Plaintiff made a threat of violence. Furthermore, there was evidence from which a rational juror could have found Harris did not take actions immediately after the alleged threat consistent with a genuine fear that Plaintiff would commit an act of violence in the workplace.

 Defendant also argues the Court erred in not allowing evidence at the punitive-damages stage of trial that showed Plaintiff's complaint to the Oregon Attorney General was without merit. Defendant argues the stipulation not to challenge Plaintiff's "good faith" in making the report prevented Defendant from advising the jury about the outcome of the official investigation. As noted earlier, however, whether the report of suspected criminal activity is later shown to have been valid is not relevant to the requirement that the employee must have acted in good faith when the report was made. *Jensen,* 170 Or.App. at 54, 11 P.3d 678. In any event, evidence of the outcome of the official investigation would not have been admissible on the issue of Plaintiff's good faith.

The Court decided to defer proceedings on Plaintiff's punitive-damages claim until after the jury reached a verdict on Plaintiff's underlying claim. Before the Court bifurcated the proceedings, however, both Plaintiff and Defendant agreed that no additional evidence would be presented on punitive damages (except for evidence of Defendant's financial worth) if that approach were taken and proceedings went forward on Plaintiff's punitive damages claim. Accordingly, any evidence of the outcome of the official investigation into Defendant's business practices was properly excluded at the punitive-damages stage of trial. The Court finds, moreover, the

fact that Plaintiff's complaint had no merit according to government officials approximately two years after Plaintiff's termination was not relevant to Defendant's motive in discharging Plaintiff. Thus, such evidence was properly excluded.

Based on the foregoing, the Court concludes the jury's verdict on punitive damages is not contrary to the clear weight of the evidence. Defendant's Motion for New Trial, therefore, is denied, and the judgment to be entered shall provide for punitive damages as determined by the jury.

## *PLAINTIFF'S AMENDED MOTION FOR ENTRY OF JUDGEMENT*

Plaintiff has moved to withdraw his earlier request for entry of judgment omitting the State of Oregon as a judgment creditor to share in Plaintiff's punitive-damages award. Plaintiff and the State have stipulated that the issue whether Or.Rev.Stat. § 18.540 is constitutional is not ripe for decision in this action at this time. Accordingly, pursuant to Or.Rev.Stat. § 18.540(1), the Oregon Department of Justice shall be named a judgment creditor concerning the punitive damages awarded in the form of judgment to be issued by the Court.

## *CONCLUSION*

Based on the foregoing, Plaintiff's Motion for Entry of Judgment (# 107) as modified is **GRANTED**, Defendant's Motion for Judgment as a Matter of Law Regarding Punitive Damages and Alternative Motion for New Trial (# 113) is **DENIED**, and Plaintiff's Amended Motion for Entry of Judgment as to the State of Oregon (# 116)is **GRANTED**.

Plaintiff shall submit a form of judgment consistent with this Opinion and Order. The Court observes Plaintiff's last name has been spelled variously as "Oglesby" and "Ogelsby" in written submissions by

Plaintiff and Defendant throughout these proceedings. Plaintiff's name is spelled "Ogelsby" on his Complaint (# 1), but his name appears as "Oglesby" on most (but not all) of his other submissions. Plaintiff shall take care that his name is properly spelled on the form of judgment he submits.

IT IS SO ORDERED.